CHARLES RICHARD MCCAIN, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8061–82.     Filed December 6, 1983.

Charles Richard McCain, pro se.
*Robert M. Ratchford,* for the respondent.

---

FEATHERSTON, *Judge*: Respondent determined a deficiency in the amount of $3,570.16 in petitioner's Federal income tax for 1979. The issues for decision are the following:

(1) Whether petitioner is entitled to either a deduction for certain excess foreign living expenses under section 913,[1] or the hardship area foreign earned income exclusion provided by section 911 by virtue of his employment in the Panama Canal Zone during 1979;

(2) Whether petitioner is exempt from taxation by the United States of his income earned while employed by the Panama Canal Commission during the period from October 1, 1979, through December 31, 1979, pursuant to the terms of the Panama Canal Treaty.

## FINDINGS OF FACT

At the time he filed his petition in this case, petitioner Charles Richard McCain (hereinafter petitioner) was a resident of the Panama Canal Zone (hereinafter Canal Zone). Petitioner was born in Bogalusa, La. He is currently and was, during 1979, a U.S. citizen.

In January 1977, petitioner began working in the Canal Zone as a machinist for the Panama Canal Co. At that time, and until September 30, 1979, the United States exercised territorial sovereignty over the Canal Zone pursuant to a 1903 treaty between the United States and the Republic of Panama. In that treaty, Panama granted to the United States "all the rights, power and authority within the [Canal] zone * * * which the United States would possess and exercise if it were the sovereign."[2] Under title 2, chapter 5, section 61 of the Canal Zone Code, the Panama Canal Co. was the agency of the United States which was responsible for the operation and control of the Panama Canal.

Petitioner was employed by the Panama Canal Co. from January 24, 1977, through September 30, 1979. During that

---

[1] All section references are to the Internal Revenue Code of 1954 as in effect during the tax year in issue, unless otherwise indicated.

[2] Isthmian Canal Convention, art. III, 33 Stat. 2234; T.S. 431 (signed Nov. 18, 1903; entered into force Feb. 26, 1904); 2 W. Malloy, Treaties, Conventions, International Acts, Protocol and Agreements Between the United States of America and Other Powers, 1736–1937, at 1349 (1910).

period, petitioner received $18,925.61 in wages from the Panama Canal Co.

On October 1, 1979, the effective date of the Panama Canal Treaty, T.I.A.S. 10030 (hereinafter Canal Treaty), the Panama Canal Co. became the Panama Canal Commission. That organization, like the Panama Canal Co., is an agency of the United States (22 U.S.C. secs. 3611 and 3651) and is responsible for the operation of the Panama Canal. Petitioner was employed by the Panama Canal Commission from October 1, 1979, to the date of the trial. During 1979, from October 1 through December 31, petitioner received $4,810.81 in wages from the Panama Canal Commission.

Petitioner has resided continuously in the Canal Zone from January 1977 to the date of the trial. During 1979, he left the Canal Zone from September 1 through October 10, while vacationing in the United States. Petitioner did not pay any income taxes to the Republic of Panama during 1979.

On a Form 2555 attached to his 1979 Form 1040, petitioner stated that he was claiming both a deduction for certain excess foreign living expenses[3] under section 913 and a hardship area foreign earned income exclusion pursuant to section 911.

In the notice of deficiency, respondent determined that petitioner could not, as a matter of law, be allowed both a section 913 deduction and a section 911 exclusion, and, in any event, that he did not qualify for the relief of either section 913 or 911 because he had failed to establish that he met either the bona fide residence or physical presence requirements of those sections. At trial, petitioner argued, in addition to his claims under sections 913 and 911, that the income which he earned from the Panama Canal Commission during the period from October 1, 1979, through December 31, 1979, is exempt from taxation by the United States by reason of the terms of the Canal Treaty.

---

[3]As set forth on page 3 of the Form 2555, petitioner claimed a deduction of $4,560.46 for excess foreign living expenses consisting of qualified home leave expenses of $1,000 and the amount of $3,560.46 which on line 31(e) he designates as a qualified cost-of-living differential and, on line 38, as a qualified hardship area deduction. Petitioner, however, was not paid a cost-of-living differential during 1979. He evidently intended the $3,560.46 amount to be a qualified hardship area deduction.

OPINION

1. Applicability of Sections 913 and 911

On his income tax return for 1979, petitioner appears to have claimed both section 913 deductions and a section 911 exclusion. Respondent contends that petitioner qualifies for neither the deduction nor the exclusion,[4] and we agree.

*Section 913*

As applicable to the taxable year 1979, section 913(a)[5] provided for the allowance of certain specified deductions (1) to a U.S. citizen who was a bona fide resident of a foreign country or countries for an uninterrupted period which includes an entire taxable year, or (2) a U.S. citizen or resident who, during any period of 18 consecutive months, is present in a foreign country or countries during at least 510 days in such period. The allowable deductions under section 913(b) include such items as qualified housing expenses, qualified home leave travel expenses, and a qualified hardship area deduction. For purposes of section 913, section 1.913-3(d), Income Tax Regs., defines the term "foreign country" as "any territory under the sovereignty of a government other than that of the United States. * * * It does not include a possession or territory of the United States."

Relying on this regulation, respondent contends that the Canal Zone was not a foreign country from January 1, 1979, through September 30, 1979, because the United States exercised territorial sovereignty over the Canal Zone in

---

[4]Respondent also makes the point that both a sec. 911 exclusion and a sec. 913 deduction may not be allowed for the same year, citing sec. 1.913-2(a)(2), Income Tax Regs., which is, in pertinent part, as follows:

"A taxpayer does not qualify for the section 913 deduction during a taxable year * * * if the taxpayer excludes from gross income under section 911 any earned income attributable to services performed during that taxable year. * * * "

[5]SEC. 913. DEDUCTION FOR CERTAIN EXPENSES OF LIVING ABROAD.

(a) Allowance of Deduction.—In the case of an individual who is—

(1) Bona fide resident of foreign country.— A citizen of the United States and who establishes to the satisfaction of the Secretary that he has been a bona fide resident of a foreign country or countries for an uninterrupted period which includes an entire taxable year, or

(2) Presence in foreign country for 17 months.—A citizen or resident of the United States and who during any period of 18 consecutive months is present in a foreign country or countries during at least 510 full days in such period,

there shall be allowed as a deduction for such taxable year or for any taxable year which contains part of such period, the sum of the amounts set forth in subsection (b).

accordance with the 1903 treaty between the United States and the Republic of Panama. He maintains that the Canal Zone was a possession of the United States until October 1, 1979, the effective date of the Canal Treaty. Thus, according to the argument, petitioner may not be allowed a section 913 deduction from income earned during that period because he was not a resident of a foreign country.

Respondent, however, concedes on brief that beginning on October 1, 1979, the effective date of the Canal Treaty, the Canal Zone is a foreign country for purposes of section 913. Respondent further concedes that petitioner was in fact a resident of a foreign country from October 1 through December 31, 1979, in that he meets the bona fide residence test of section 913(a)(1) for that period.

As noted in our findings of fact, prior to October 1, 1979, the effective date of the Canal Treaty, the United States exercised territorial sovereignty over the Canal Zone pursuant to the 1903 Isthmian Canal Convention between the United States and the Republic of Panama. Specifically, article III of the 1903 Treaty provided as follows:

### ARTICLE III.

The Republic of Panama grants to the United States all the rights, power and authority within the zone * * * which the United States would possess and exercise *if it were the sovereign* of the territory within which said lands and waters are located to the entire exclusion of the exercise by the Republic of Panama of any such sovereign rights, power or authority. [Emphasis added.]

The "if it were the sovereign" language of article III, has caused much uncertainty as to whether the United States possessed actual sovereignty over the Canal Zone under the terms of the 1903 Isthmian Canal Convention. If the United States had actual sovereignty over the Canal Zone, it was not a foreign country, but was a possession. On the other hand, if the Republic of Panama retained sovereignty over the Canal Zone, then the Canal Zone could be considered a foreign country for purposes of section 913.[6]

---

[6]In the First Stipulation for Trial, the parties stipulated that Panama was a possession of the United States prior to the effective date of the Canal Treaty. We do not, however, base our decision on that ground and we regard that stipulation as a conclusion of law. See *Jamison Coal & Coke Co. v. Commissioner*, 24 B.T.A. 554, 566 (1931), revd. in part and affd.

We need not decide this controversial issue here, however, because even if petitioner meets the bona fide residence test of section 913(a)(1), he still does not qualify for a section 913 deduction because of the limitation contained in section 913(c)(1) which in relevant part provides:

SEC. 913(c). DEDUCTION NOT TO EXCEED NET FOREIGN SOURCE EARNED INCOME.—

(1) IN GENERAL.—The deduction allowed by subsection (a) to any individual for the taxable year shall not exceed—

(A) such *individual's earned income from sources outside the United States* for the portion of the taxable year in which such individual's tax home is in a foreign country * * * [Emphasis added.]

The term "earned income" is defined in section 913(j)(1)(A) as having—

the meaning given to such term by section 911(b) (determined with the rules set forth in paragraphs (2), (3), (4), and (5) of section 911(c)), except that *such term does not include amounts paid by the United States or any agency thereof.* [Emphasis added.]

As set forth in our findings of fact above, petitioner was employed and paid during the period from January 1, 1979, through September 30, 1979, by the Panama Canal Co., an agency of the United States. Similarly, during the period from October 1, 1979, through December 31, 1979, petitioner was employed and paid by the Panama Canal Commission, also an agency of the United States. Because petitioner's only income

---

in part 67 F.2d 342 (3d Cir. 1933); *Ohio Clover Leaf Dairy Co. v. Commissioner,* 8 B.T.A. 1249, 1256 (1927), affd. per curiam 34 F.2d 1022 (6th Cir. 1929).

The report of the Senate Committee on Foreign Relations, portions of which are discussed in part 2 of our opinion below, concludes, based on Supreme Court precedent and certain enumerated "indices of sovereignty," that "the Republic of Panama retained titular sovereignty over the Canal Zone." Exec. Rept. 95–12, at 71 (1978). See Smit, "The Panama Canal: A National or International Waterway?", 76 Colum. L. Rev. 965, 966–976 (1976), and Note, "Legal Aspects of the Panama Canal Zone — In Perspective," 45 B.U.L. Rev. 64, 75 (1975), which discuss the inconsistency found both in U.S. legislation and court decisions which treat the Canal Zone as a foreign country in some circumstances and a possession in others.

For purposes of administration and collection of taxes by the United States, the Canal Zone is considered to be a possession of the United States pursuant to sec. 7651(4). The reference in sec. 7651(4) to the Canal Zone as a possession has not been changed despite the adoption of the 1979 Canal Treaty. It is not at all clear, however, that the definition of the Canal Zone as a possession for administrative and collection purposes makes it a possession for purposes of sec. 913 and sec. 1.913–3(d), Income Tax Regs.

for 1979 was derived from agencies of the United States, he had no "earned income from sources outside the United States" in 1979, within the meaning of section 913(c)(1)(A). The amount of a section 913 deduction may not exceed such income, and, therefore, petitioner is not entitled to a deduction under that section.

## Section 911

Section 911(a)[7] provides, in relevant part, that an individual described in section 913(a) who, because of his employment, resides in a camp located in a hardship area and meets other specified requirements, shall not include in gross income a stated amount of earned income. The amounts of earned income to be excluded from gross income must be received from sources within foreign countries. As in the case of section 913(j)(1)(A), any earned income excluded pursuant to section 911(a) does not include "amounts paid by the United States or any agency thereof." Thus, wholly apart from the question of whether the Canal Zone is a foreign country, petitioner does not qualify for the section 911 exclusion because his 1979 income was received from the Panama Canal Co. and the Panama Canal Commission, both of which are agencies of the United States. See generally *Standard Oil Co. v. Johnson*, 316 U.S. 481, 485 (1942); *Smith v. Commissioner*, 77 T.C. 1181 (1981), affd. 701 F.2d 807 (9th Cir. 1983), and cases cited.

---

[7]SEC. 911. INCOME EARNED BY INDIVIDUALS IN CERTAIN CAMPS.

(a) GENERAL RULE.—In the case of an individual described in section 913(a) who, because of his employment, resides in a camp located in a hardship area, the following items shall not be included in gross income and shall be exempt from taxation under this subtitle:

(1) BONA FIDE RESIDENT OF FOREIGN COUNTRY.— If such individual is described in section 913(a)(1), amounts received from sources within a foreign country or countries *(except amounts paid by the United States or any agency thereof)* which constitute earned income attributable to services performed during the period of bona fide residence. The amount excluded under this paragraph for any taxable year shall be computed by applying the special rules contained in subsection (c).

(2) PRESENCE IN FOREIGN COUNTRY FOR 17 MONTHS.—If such individual is described in section 913(a)(2), amounts received from sources within a foreign country or countries *(except amounts paid by the United States or any agency thereof)* which constitute earned income attributable to services performed during the 18-month period. The amount excluded under this paragraph for any taxable year shall be computed by applying the special rules contained in subsection (c).

[Emphasis added.]

## 2. Petitioner's Claimed Exemption Under the Panama Canal Treaty

Petitioner also contends that his income from the Panama Canal Commission, earned during the period from October 1, 1979, the effective date of the Canal Treaty, through December 31, 1979, is exempt from taxation by the United States under the terms of article III of the Canal Treaty and the Agreement in Implementation of Article III, T.I.A.S. 10031 (hereinafter the agreement). After careful consideration, we think that the Canal Treaty and the implementing agreement exempt petitioner from Panamanian income tax, but not from U.S. income tax, on his Panama Canal Commission income.

As stated in our findings, prior to the effective date of the Canal Treaty, the United States exercised territorial sovereignty over the Canal Zone pursuant to the terms of a 1903 treaty between the United States and the Republic of Panama. On September 7, 1977, the United States and the Republic of Panama signed both the Canal Treaty and the Treaty Concerning the Permanent Neutrality and Operation of the Panama Canal, T.I.A.S. 10029, in order to redefine the control of each country over the Panama Canal and the Canal Zone. By article I of the Canal Treaty, full sovereign control of the Canal Zone was returned to the Republic of Panama, thereby terminating the territorial jurisdiction exercised after 1903 by the United States. By article III, paragraph 3 of the Canal Treaty, the Panama Canal Commission, a U.S. agency, was charged with responsibility for the operation and management of the Panama Canal. This new organization replaced the Panama Canal Co. in carrying out that function.

Article III of the Canal Treaty is entitled "Canal Operation and Management." Paragraph 9 of article III provides as follows:

9. The use of the areas, waters and installations with respect to which the United States of America is granted rights pursuant to this Article, and the rights and legal status of United States Government agencies and employees operating in the Republic of Panama pursuant to this Article, *shall be governed by the Agreement in Implementation of this Article, signed this date.* [Emphasis added.]

The agreement referred to in article III of the Canal Treaty was signed and effective on the same dates as the Canal Treaty, and it contains specific provisions governing the U.S.

agencies which operate in the Canal Zone and U.S. citizen employees of those agencies. Article XV of the agreement is entitled "Taxation" and provides as follows:

ARTICLE XV

TAXATION

1. By virtue of this Agreement, the Commission, its contractors and subcontractors, are exempt from payment in the Republic of Panama of all taxes, fees or other charges on their activities or property.

2. *United States citizen employees and dependents shall be exempt from any taxes, fees, or other charges on income received as a result of their work for the Commission.* Similarly, they shall be exempt from payment of taxes, fees or other charges on income derived from sources outside the Republic of Panama.

3. United States citizen employees and dependents shall be exempt from taxes, fees or other charges on gifts or inheritance or on personal property, the presence of which within the territory of the Republic of Panama is due solely to the stay therein of such persons on account of their or their sponsor's work with the Commission.

4. The Coordinating Committee may establish such regulations as may be appropriate for the implementation of this Article.

[Emphasis added.]

The issue raised by petitioner's claim is whether the broad "any taxes" language of article XV, paragraph 2 of the agreement, exempts him from U.S. income tax liability on salary or wages received for his work for the Panama Canal Commission. Taken on its face, the "any taxes" language may be read literally to grant the broad tax exemption urged by petitioner. When paragraph 2 is read in context with paragraphs 1 and 3 of article XV, however, we find that the language of paragraph 2 does not clearly grant this exemption.

Paragraph 1 exempts the Panama Canal Commission, its contractors, and subcontractors from payment of all Panamanian taxes. Likewise, paragraph 3 exempts U.S. citizen employees and their dependents from payment of Panamanian estate, gift, and personal property taxes on account of their own or their sponsor's work for the Panama Canal Commission. In light of the language of paragraphs 1 and 3, it could well be argued, as does respondent, that the import of article XV, taken as a whole, is that the United States seeks to protect its agency, the Panama Canal Commission, and the Commission's U.S. citizen employees from taxation by Panama on income or property other than private business activities in

Panama unrelated to the Commission. Thus, under respondent's interpretation, paragraph 2 would exempt petitioner, a U.S. citizen employee of the Panama Canal Commission, not from U.S. income taxes, but rather, from Panamanian income taxes only.

Because of the ambiguity made apparent by petitioner's and respondent's conflicting interpretations of article XV of the agreement, we look to other sources for guidance as to the meaning intended by the parties in adopting this treaty language. The interpretation of any treaty must begin with the language of the treaty itself, and the clear import of that language must control unless there is an indication that "application of the words of the treaty according to their obvious meaning effects a result inconsistent with the intent or expectations of its signatories." *Sumitomo Shoji America, Inc. v. Avagliano*, 457 U.S. 176, 180 (1982), citing *Maximov v. United States*, 373 U.S. 49, 54 (1963). When treaty language is ambiguous or admits of more than one construction, as is here the case, any relevant extraneous matter, such as the legislative history of the treaty, may be considered in determining the signatories' intent or expectations. *Nielsen v. Johnson*, 279 U.S. 47, 52 (1929); *Hidalgo County Water Control & Imp. Dist. v. Hedrick*, 226 F.2d 1, 8 (5th Cir. 1955).

A review of the legislative history of the Canal Treaty demonstrates that respondent's interpretation is indeed what was intended by the United States. As to the language in article XV of the agreement, the following is part of an interchange between Senator Richard Stone of the Committee on Foreign Relations and Mr. Herbert J. Hansell, Legal Adviser to the Department of State, one of the agencies charged with negotiating the Canal Treaty and the agreement, during Senate committee hearings on the Canal Treaty:

> Senator STONE. I think it was article XV, section 1 that raised an interesting question. I will read it to you. "By virtue of this agreement the Commission, its contractors and subcontractors are exempt from payment in the Republic of Panama of all taxes, fees, or other charges on their activities or properties." Then, *in No. 2, referring to U.S. citizen employees and dependents, it says, "shall be exempt from any taxes, fees, or other charges on income received as a result of their work for the Commission.* Similarly, they shall be exempt from payments of taxes, fees, or other charges on income derived from sources outside the Republic of Panama."

Of course, when that was announced, the press reported the glee of the Zonians that they were now exempt from U.S. income tax. When Senator Glenn asked you, are there any words that you would like to see in the treaty, I was just asking myself, would you like to see the words, United States, in there somewhere?

Mr. HANSELL. I am sorry to be a source of disappointment for the Panamanians, but obviously *we are not entering into an agreement between the United States and Panama that would exempt U.S. citizens from U.S. tax. The purpose of this, of course, was to exempt them from Panamanian tax.*

\*     \*     \*     \*     \*     \*

Senator STONE. Wouldn't you think that we could put in the understanding that I suggested to you, the clarification of our interpretation which then, when ratified by the Congress, by the Senate, and deposited, would clarify that in a little more formal way than simple advices, since you don't want to put words back in the treaty through negotiation?

Mr. HANSELL. The one comment I would have with respect to that, and this relates to a couple of other points, is that we are dealing now with an internal U.S. matter, not a matter between the United States and Panama. That is, *we don't agree with Panama how we are going to tax our citizens. That is obviously an internal matter.* I would hope we could find ways of dealing with internal matters other than as understandings.

[Hearings on Panama Canal Treaties Before the Comm. on Foreign Relations, 95th Cong., 1st Sess. 268 (1977). Emphasis added.]

This interchange confirms the position urged by respondent. In providing for the termination of more than 70 years of U.S. jurisdiction to exercise rights, power, and authority as "if it were the sovereign"[8] and for the return of control over the Canal Zone to the Republic of Panama, the United States would be concerned how the Republic of Panama would treat U.S. citizen employees of the Panama Canal Commission, a U.S. agency. One area of particular concern would be the imposition by Panama of any taxes on the agency or its U.S. citizen employees. On the other hand, as pointed out by Mr. Hansell, the imposition of taxes by either sovereign on its own citizens would not have been of concern to the treaty negotiators. Clearly, the United States would have no interest in negotiating with the Republic of Panama on whether it may tax its own citizens.

Additional legislative history supporting respondent's position is found in the report of the Senate Committee on Foreign Relations on the Panama Canal Treaties, Exec. Rept. 95–12, 95th Cong., 1st Sess. (1978). Contained in this report is a

---

[8] See art. III of the 1903 Treaty, quoted above.

section-by-section analysis of the Canal and Neutrality Treaties and the implementing agreements. The introduction to the analysis states that it was provided to the Committee on Foreign Relations by the State Department, and in a transmittal letter to Senator Sparkman, then Chairman of the Committee on Foreign Relations, Douglas J. Bennet, Jr., the State Department's Assistant Secretary for Congressional Relations, stated the following (Exec. Rept. 95–12 at 127):

> These analyses were prepared by members of the treaty negotiating team and have been approved by the offices of the State and Defense Departments directly involved in the negotiations, including the Panama Canal Company. Accordingly, these comments may be considered as an authoritative source of information with respect to the negotiating background and interpretation of the Treaties.

The analysis states the following with respect to article XV, paragraph 2 of the agreement (Exec. Rept. 95–12, at 155):

> Paragraph 2 exempts United States citizen employees and dependents from the imposition *by Panama* of taxes on income received as a result of their work with the Commission and on the income derived from sources outside Panama. Such persons are subject, however, to Panamanian taxation of any income derived from sources outside Panama, other than their employment with the United States Government. [Emphasis added.]

In construing a treaty, courts should give great weight to the meaning ascribed by the Government departments charged with negotiation and enforcement of the treaty. *Kolovrat v. Oregon*, 366 U.S. 187, 194 (1961); *Factor v. Laubenheimer*, 290 U.S. 276, 295 (1933); *State of Minnesota v. Block*, 660 F.2d 1240, 1258 (8th Cir. 1981). Both Mr. Hansell's testimony and the State Department's analysis support our conclusion that article XV, paragraph 2 of the agreement was intended to exempt U.S. citizen employees of the Panama Canal Commission from Panamanian income tax, but not to make an exception to the well-settled rule that U.S. citizens are subject to income taxation by the United States on their worldwide income. See sec. 1.1–1(b), Income Tax Regs.; *Cook v. Tait*, 265 U.S. 47 (1924); *Fuller v. Commissioner*, 74 T.C. 406, 410 (1980).

Although this is an issue of first impression for this Court, several District Court opinions have recently addressed the issue and have reached the same conclusion as we reach here. *Corliss v. United States*, 567 F. Supp. 162 (W.D. Ark. 1983); *Highley v. United States*, an unreported case (M.D. Tenn. 1983,

83–2 USTC par. 9633); *Pierpont v. United States*, an unreported case (D. S.C. 1983, 83–2 USTC par. 9647). Those courts based their holdings on the same legislative history as we have cited above.[9]

In view of the foregoing, the Canal Treaty and the implementing agreement do not exempt petitioner's income from taxation by the United States. As a U.S. citizen, he is taxable by the United States on his income from the Panama Canal Commission for the period in question.

To reflect the foregoing,

*Decision will be entered for the respondent.*

---

[9]This issue has also been addressed in *Swearingen v. United States*, 565 F. Supp. 1019 (D. Colo. 1983). The court held that the plaintiff therein was not exempt from income taxation by the United States pursuant to the terms of the Canal Treaty. The court, however, did not base its holding, as we have, on the legislative history of the Canal Treaty and the agreement. Rather, the court held that the agreement, as an executive agreement which is not itself a treaty, nor part of the Canal Treaty, is not, like a treaty, the "supreme Law of the Land." U.S. Const. art. VI, sec. 2. Such an executive agreement cannot, like a treaty, supersede a prior inconsistent act of Congress. Thus, the court held void art. XV, par. 2 of the agreement in that it conflicts with sec. 61(a) which taxes "all income from whatever source derived."

Although we are in agreement with the final result reached in *Swearingen*, we base our holding on an analysis of the legislative history. See also *Stokes v. Commissioner*, an unreported case (W.D. Wash. 1983, 83–2 USTC par. 9644).