BILLIE E. BILLMAN, PETITIONER *V.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5881–82.     Filed September 25, 1984.

Billie E. Billman, pro se.
*Sergio Garcia-Pages*, for the respondent.

OPINION

Raum, *Judge*: The Commissioner determined a $13,901 deficiency in petitioner's Federal income tax and a $695 addition to tax under section 6653(a), I.R.C. 1954, for the year 1977. The sole issue for decision is whether petitioner is required to pay Federal income tax with respect to his 1977 wages.[1]

Petitioner is a tax protester. At the time he filed his petition herein, he was a resident of the Republic of Panama. During 1977 he worked as a ship pilot, receiving $39,114.50 in wages from the Panama Canal Co. He filed a Form 1040 for that year but reported no income of any kind. He inserted the word "None" in response to items on his Form 1040 calling for the amount of his wages, salaries, and other employee compensation, as well as for the amounts of his dividends, interest, and other income. However, he claimed deductions for charitable contributions in the aggregate amount of $91,166, consisting of (1) his $39,114.50 wages which he described as "remuneration received * * * for the assigned agent services as directed by the Miletus Church," and (2) $54,260[2] in purported transfers to the Miletus Church of various items of property, specified in an attached receipt as his residence equity, a lot, personal property, and "H.H. Furnishings," gun collection, securities, an automobile, and two bank accounts (savings and checking). He attempted to justify the deduction or nontaxability of his $39,114.50 wages as a ship pilot by a certification and a notice attached to his Form 1040 to the effect that petitioner, as a "member" of the Miletus Church, Inc., Wayzata, MN, "served

---

[1]For convenience, our findings of fact are combined with and are incorporated in the opinion.
[2]The fact that this figure when added to the $39,114.50 wages is not equal to the $91,166 claimed deduction is unexplained.

as an appointed agent performing directed duties as a missionary and Christian priest," and that he was "required by the church to perform missionary duties as Pilot with the Panama Canal Company." A W-2 Form is attached to petitioner's Form 1040 showing his $39,114.50 wages and $2,208.57 of Federal taxes withheld, and he claimed a refund of the entire amount withheld. In view of his failure or refusal to report any income whatever on his Form 1040, it would appear that his sole reason for submitting the W-2 along with the Form 1040 was to obtain a refund of the taxes withheld, and not to report any wages received. Petitioner voluntarily signed the Form 1040, dated March 21, 1978, and there is no credible evidence that his signature was obtained by deception or fraud, notwithstanding his contention to the contrary in respect of the Form 1040 and the Form 872 referred to in the next paragraph.

On January 17, 1981, petitioner signed a Form 872, "Consent to Extend the Time to Assess Income Tax," for his 1977 taxable year, thereby agreeing to extend the time during which he could be assessed a tax or sent a deficiency notice in respect of that year to December 31, 1981. There is no credible evidence that his signature was obtained under any duress or through fraud or deception.

In his deficiency notice, dated October 29, 1981, the Commissioner disallowed petitioner's charitable contribution "since it has not been established that any amount was contributed to any qualified charity," increased his taxable income by the amount of wages received from the Panama Canal Co., and determined the deficiency here in controversy accordingly. The Commissioner also found that the underpayment in tax was due to negligence or intentional disregard of rules and regulations, and, as a consequence, determined a $695 addition to tax pursuant to section 6653(a), I.R.C. 1954.

The amended petition filed in this Court attacking the Commissioner's determination contains 39 assignments of error and 52 allegations of supporting fact, most of them frivolous and largely of the tax protester variety. Thus, he challenged the Commissioner's determination that he is a "taxpayer," or that he had a "tax year" ending December 31, 1977, or that he was "a person liable for tax for the year in dispute," or that "the labor performed by Petitioner was not property acquired by Petitioner from another person." Such

assignments of error are typical of many others in the amended petition.

At the trial, petitioner categorically refused to present any substantive evidence to establish that he was entitled to the deductions claimed by him or that his earnings as a ship pilot were not includable in gross income. However, to the extent that the materials in the record permit any kind of judgment on the merits, it would seem clear that the position taken by petitioner in his return is thoroughly unsound. The Court has been inundated with a flood of tax protester cases involving sham or questionable "churches,"[3] spurious religious "orders," and patently deceptive "vows of poverty." To be sure, the record before us is not as complete as we would like in this respect as a result of petitioner's adamant refusal to present any evidence on the merits. Nevertheless, there is more than enough to make clear the tax protester type of claim put forward by him and to conclude that there is no merit to the substance of his position as revealed in his return. In this connection, it may be well to call attention to the following comments recently made by the Fifth Circuit in the case of another tax protester, *Crain v. Commissioner*, 737 F.2d 1417, 1418 (5th Cir. 1984):

> We perceive no need to refute * * * [the taxpayer's] arguments with somber reasoning and copious citation of precedent; to do so might suggest that these arguments have some colorable merit. * * *

> \* \* \* \* \* \* \*

> We are sensitive to the need for the courts to remain open to all who seek in good faith to invoke the protection of law. An appeal that lacks merit is not always—or often—frivolous. However, we are not obliged to suffer in silence the filing of baseless, insupportable appeals presenting no colorable claims of error and designed only to delay, obstruct, or incapacitate the operations of the courts or any other governmental authority. Crain's present appeal is of this sort. It is a hodgepodge of unsupported assertions, irrelevant platitudes, and legalistic gibberish. The government should not have been put to the trouble of responding to such spurious arguments, nor this court to the trouble of "adjudicating" this meritless appeal.

---

[3] In one such case, the taxpayer's counsel cynically, or perhaps facetiously, inquired of his client whether he had considered calling his church the "Church of the Immaculate Deduction." *Duck v. Commissioner*, T.C. Memo. 1984–212, 47 T.C.M. 1654, 1657, 53 P-H Memo T.C. par. 84,212 (1984).

* * * The United States shall recover from appellant Crain twice its cost of this appeal. Additionally, we assess against Crain a damage award of $2,000 in favor of the appellee United States.

Even if it be thought that there is not enough affirmative material in the record herein to characterize the present case in like terms, it must be remembered that the burden of proof was upon the petitioner, and he has completely failed to establish the correctness of the return filed by him. In this respect, this case is quite similar to *Greeno v. Commissioner*, T.C. Memo. 1981–521, 42 T.C.M. 1112, 50 P-H Memo T.C. par. 81,521 (1981), involving another "member" or "priest" of the Miletus Church, and we reach the same result here.[4] Cf. also *McGahen v. Commissioner*, 76 T.C. 468 (1981), affd. 720 F.2d 664 (3d Cir. 1983), where this Court suggested (p. 483) that the taxpayer might even have properly been charged with fraud.

Although petitioner refused to present any evidence at the trial to support his church-related claims, he did make an aggressive attack upon the Government's position, and sought to escape all liability for tax by relying on the Privacy Act of 1974, Pub. L. 93–579, 88 Stat. 1896 (1974), codified at 5 U.S.C. sec. 552a (1982), as a sword to defeat the Internal Revenue laws. He contends that, as a "private individual defined in the Privacy Act," he is not required to pay tax because the "IRS has admitted that the * * * [Internal Revenue Code] does not apply" to such individuals. He notes that the Privacy Act requires the Internal Revenue Service to (5 U.S.C. sec. 552a(e)(3)): "inform each individual whom it asks to supply information * * * the authority * * * which authorizes the solicitation of the information." He then concludes that, because the Form 1040 "Privacy Act Notice" fails to mention section 6012, I.R.C. 1954, he is not required to provide any tax related information and, indeed, is freed from paying any tax at all. In our judgment, petitioner's position is based on sheer sophistry. We hold that the Form 1040 "Privacy Act Notice" does satisfy the requirements of the Privacy Act, and that, in any event, even if there were a failure to comply with the

---

[4]The opinion in *Greeno* sets forth the origin of the Miletus Church and its cynically intended use for tax-avoidance purposes. It seems to have been organized by a "Bishop" Holmes, who appears to control its affairs, and who certifies its "members" as "priests" or "missionaries." The *Greeno* opinion indicated that advertisements promoting "membership" in the church pointedly called attention to the tax-avoidance benefits that could be expected.

Privacy Act, such failure would not nullify petitioner's liability for Federal income taxes.

The Privacy Act requires Government agencies which request information to disclose to those from whom information is sought the statute or order that authorizes such request for information. The Secretary of the Treasury (or his delegate) is empowered to request certain information with respect to the payment of taxes by sections 6001, 6011, and 6109, I.R.C. 1954. Section 6001 allows him to "require any person * * * to make such returns, render such statements, or keep such records, as * * * [he] deems sufficient to show whether or not such person is liable for tax under" the Internal Revenue Code. Section 6011 provides that "When required by regulations prescribed by the Secretary [or his delegate] any person made liable for any tax imposed by [the Code] * * * shall make a return or statement according to the forms and regulations prescribed by the Secretary [or his delegate]." Section 6109 allows the Secretary (or his delegate) to require taxpayers to include an identification number, like a Social Security number, on their tax return. Thus, sections 6001, 6011, and 6109 provide the Secretary with sufficient authority to collect all of the information requested on Form 1040. The Form 1040 "Privacy Act Notice," reproduced in part in the margin,[5] identifies all three of these sections and does so in a way which clearly fulfills the mandate of the Privacy Act. Cf. *United States v. Wilber*, 696 F.2d 79, 80 (8th Cir. 1982); *United States v. Annunziato*, 643 F.2d 676, 678 (9th Cir. 1981), cert. denied 452 U.S. 966 (1981).

To be sure, section 6012(a), upon which petitioner relies, sets forth further refinements and details relating to the authority of the Treasury to seek the information called for in Form 1040, the Federal individual income tax return. The IRS probably would have been better advised to have included a reference to section 6012(a) along with the other sections referred to on its Form 1040 Privacy Act notice. But the sections already included in that notice do disclose the basic authority allowing the Commissioner to request that petition-

---

[5]PRIVACY ACT NOTICE

Our legal right to ask for information is Internal Revenue Code sections 6001 and 6011 and their regulations. They say that you must file a return or statement with us for any tax you are liable for. Code section 6109 and its regulations state that you must show a social security number on what you file. This is so we know who you are, and can process your return and papers.

er file an income tax return. And we do not regard the failure to mention section 6012(a) in the notice as fatal or as affecting its validity. Nor, in any event, would such failure relieve every individual taxpayer in the United States of his liability for Federal income taxes—a result that would inevitably follow if petitioner's ultimate position were sound. That Congress intended any such result is too absurd to contemplate.

Even if there were a clear violation of the Privacy Act by the IRS, the consequences of such violation would not nullify petitioner's liability for income tax. That act merely authorizes an individual who has been adversely affected by the violation "to bring a civil action against the agency," and sets forth certain allowable penalties. 5 U.S.C. sec. 552a(g)(1) and (4). It nowhere even suggests that the payment of taxes is excused where there is error in a Privacy Act notice.

Petitioner next alleges that the Government's failure to publish Forms 1040 and W-4 and the related Privacy Act notices in the Federal Register obviates any responsibility that he may have to file a Federal income tax return and relieves him of all liability for Federal income tax. This is patently frivolous. Forms 1040 and W-4 merely facilitate taxpayers' compliance with the Internal Revenue laws and we know of no authority requiring them to be published in the Federal Register. 44 U.S.C. sec. 1505 (1982). See *United States v. Justis*, an unreported case (D. Del. 1984, 54 AFTR 2d 84–5455). Cf. *United States v. Devaughn*, 414 F. Supp. 774, 779 (D. Md. 1976), affd. per curiam 556 F.2d 575 (4th Cir. 1977), cert. denied 434 U.S. 954 (1977), rehearing denied 434 U.S. 1025 (1978). The Privacy Act notices also are not the type of thing that must be published in the Federal Register but need only be available on the "form [used] * * * to collect the information or on a separate form that can be retained by the individual." 5 U.S.C. sec. 552a(e)(3) (1982). *United States v. Justis, supra.* Again, we reject petitioner's position.

Petitioner's last contention is that the statute of limitations bars any assessment of tax with respect to his 1977 tax year since his agreement (generally referred to as a waiver) to extend such statute was fraudulently obtained. His argument in this respect is based on his position that the waiver, like the Form 1040, is a nullity since the IRS Privacy Act Notice was fraudulent. In this connection, his testimony at the trial and

no credible evidence whatever of the fraud charged by him. Petitioner's position is so lacking in merit that it does not deserve any further comment. Indeed, the shoe could well be on the other foot, and quite possibly he may be fortunate that *he* has not been charged with fraud. See *McGahen v. Commissioner*, 76 T.C. at 483.

Finally, as to the 5-percent addition to tax under section 6653(a), it is clear from the record that petitioner's underpayment was "due" at least "to negligence or intentional disregard of rules and regulations," and we sustain the Commissioner's determination of this addition. See *Granzow v. Commissioner*, 739 F.2d 265 (7th Cir. 1984); *McGahen v. Commissioner*, 76 T.C. at 483–484. In any event, the burden of proof was upon him in this connection, and he has failed to carry it.[6] *Bixby v. Commissioner*, 58 T.C. 757, 791, 792 (1972); *Enoch v. Commissioner*, 57 T.C. 781, 802 (1972).

Accordingly,

*Decision will be entered for the respondent*

---

[6]This case does not present the question whether art. III of the Panama Canal Treaty, T.I.A.S. 10030, and the agreement in implementation of art. III, T.I.A.S. 10031, exempt from U.S. Federal taxation wages paid to U.S. citizen employees by the Panama Canal Commission, the successor to the petitioner's employer. The effective date of that treaty and the agreement was Oct. 1, 1979, and under no theory could they relate to the 1977 wages involved herein. Moreover, notwithstanding the recent decision of the Claims Court in *Coplin v. United States*, 6 Cl. Ct. 115 (July 30, 1984), to the effect that the treaty and agreement do exempt American citizen employees of the Panama Canal Commission from Federal taxation on their post-Oct. 1, 1979, wages, the rule in this Court has been otherwise. *McCain v. Commissioner*, 81 T.C. 918 (1983), convincingly so held after a careful examination of the legislative history of the treaty and agreement (pp. 925–930). See also *Collins v. Commissioner*, T.C. Memo. 1983–762, 47 T.C.M. 713, 52 P-H Memo T.C. par. 83,762. Other courts, apart from the Claims Court, are in accord. *Corliss v. United States*, 567 F. Supp. 162 (W.D. Ark. 1983); *Highley v. United States*, 574 F. Supp. 715 (M.D. Tenn. 1983); *Hollowell v. United States*, an unreported case (M.D. Fla. 1983, 53 AFTR 2d 84–698, 84–1 USTC par. 9142); *Pierpoint v. United States*, an unreported case (D. S.C. 1983, 52 AFTR 2d 83–6198, 83–2 USTC par. 9647); *Snider v. United States*, an unreported case (W.D. Wash. 1983, 53 AFTR 2d 84–349, 84–1 USTC par. 9140); *Stabler v. United States*, an unreported case (N.D. Tex. 1983, 53 AFTR 2d 84–1156, 84–1 USTC par. 9153); *Swearingen v. United States*, 565 F. Supp. 1019 (D. Col. 1983). But see *Harris v. United States*, 585 F. Supp. 862 (S.D. Ga. 1984).