John B. CORLISS and Joan V. Corliss, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. No. 82–5082.

United States District Court, W.D. Arkansas, Fayetteville Division.

June 17, 1983.

---

Darrell F. Brown, Little Rock, Ark., for plaintiffs.

Lawrence Sherlock, Trial Atty., Tax Div., Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

This is an action by the plaintiffs, John B. Corliss and Joan V. Corliss, his wife, for the recovery of federal income taxes paid for the year 1979 in the amount of $6,706.00. Jurisdiction is invoked pursuant to the pro-visions of 28 U.S.C. § 1346(a)(1), 26 U.S.C. § 7422 and 26 U.S.C. § 894. The cause is presently before the Court on the motion of plaintiffs to reconsider the summary judgment previously granted in favor of defendant, United States of America, and to grant plaintiffs a hearing. The Court will reconsider in full the parties' cross-motions for summary judgment and all other pleadings filed herein.

Plaintiffs are citizens of the United States who permanently reside in Rogers, Arkansas. During 1979, plaintiffs resided in the territory within the Republic of Panama that formerly constituted the Canal Zone and received income as a result of their work for the Panama Canal Commission.

The plaintiffs filed a joint federal income tax return for the taxable year 1979, and reported as income the salaries received from the Commission. The plaintiffs paid the tax shown to be due in the amount of $15,984.00.

In 1980, the plaintiffs filed a claim for refund of taxes paid for 1979 in the amount of $6,706.00, which represents taxes assessed on wages earned from the Commission. The plaintiffs then filed a Waiver of Statutory Notification of Claim Disallowance after receiving a notice from the Internal Revenue Service that their claim for refund would be formally disallowed unless they responded within thirty days. This action was then filed within the applicable limitations period.

The issue before the Court is whether the plaintiffs are exempt from paying federal income taxes on income derived from work on the Panama Canal Commission and are thus entitled to a refund on taxes paid for 1979 in connection with this work.

On September 7, 1977, the United States and the Republic of Panama signed the Panama Canal Treaty and the Treaty Concerning the Permanent Neutrality and Operation of the Panama Canal in order to redefine the control of each country over the Panama Canal. Article III, paragraph 9, of the Panama Canal Treaty provides

that the rights and legal status of the United States government operating in the Republic of Panama shall be governed by the Agreement in Implementation of Article III, which provides in relevant part:

### Article XV

### Taxation

1. By virtue of this Agreement, the Commission, its contractors and subcontractors, are exempt from payment in the Republic of Panama of all taxes, fees or other charges on their activities or property.

2. United States citizen employees and dependents shall be exempt from any taxes, fees, or other charges on income received as a result of their work for the Commission. Similarly, they shall be exempt from payment of taxes, fees or other charges on income derived from sources outside the Republic of Panama.

3. United States citizen employees and dependents shall be exempt from taxes, fees or other charges on gifts or inheritance or on personal property, the presence of which within the territory of the Republic of Panama is due solely to the stay therein of such persons on account of their or their sponsor's work with the Commission.

4. The Coordinating Committee may establish such regulations as may be appropriate for the implementation of this Article.

Plaintiffs contend the broad "any taxes" language of paragraph 2 exempts them from paying income taxes to the United States in connection with their work for the Commission.

■ Interpretation of any treaty begins with the treaty language. The clear import of the language controls unless the "application of the words according to their obvious meaning effects a result inconsistent with the intent or expectations of its signatories." *Sumitomo Shoji America, Inc. v. Avagliano,* 457 U.S. 176, 102 S.Ct. 2374, 2377, 72 L.Ed.2d 765 (1982), *citing Maximov v. United States,* 373 U.S. 49, 54, 83 S.Ct. 1054, 1057, 10 L.Ed.2d 184 (1963). When

treaty language is ambiguous or admits of more than one construction, then any relevant extraneous matter should be considered in determining the signatories' intent or expectations. *Hidalgo County Water Control v. Hedrick,* 226 F.2d 1, 8 (5th Cir.1955), *cert. denied,* 350 U.S. 983, 76 S.Ct. 469, 100 L.Ed. 851 (1956).

Taken on its face, the "any taxes" language of paragraph 2 may literally be read to grant the broad exemption urged by plaintiffs. This language must be read in context with paragraphs 1 and 3, however. Paragraph 1 exempts the Commission, its contractors and subcontractors from payment of all taxes in the Republic of Panama. Paragraph 3 exempts United States citizen employees and their dependents from Panamanian taxes on gifts, inheritances and personal property. When taken as a whole, the Court believes the import of Article XV is that the United States seeks to protect its agency, the Canal Commission, and its employees who work for that agency, from taxation by Panama on property or work activities other than private business activities in Panama unrelated to the Commission and property used in these activities.

As paragraph 2 of Article XV is susceptible of differing interpretations, the Court will refer to extraneous matters bearing on the intent of the signing parties.

The meaning to be given the language contained in several provisions of the Panama Canal Treaty was a matter of concern during Senate hearings held September 26–30, 1977, and October 19, 1977. The following is part of an exchange that took place between Senator Stone of the Committee on Foreign Relations and Mr. Hansell, Legal Advisor to the Department of State:

Senator STONE. I think it was article XV, section 1 that raised an interesting question. I will read it to you. "By virtue of this agreement the Commission, its contractors and subcontractors are exempt from payment in the Republic of Panama of all taxes, fees, or other charges on their activities or properties." Then, in No. 2, referring to U.S. citizen

employees and dependents, it says, "shall be exempt from any taxes, fees, or other charges on income received as a result of their work for the Commission. Similarly, they shall be exempt from payments of taxes, fees, or other charges on income derived from sources outside the Republic of Panama."

Of course, when that was announced, the press reported the glee of the Zonians that they were now exempt from U.S. income tax. When Senator Glenn asked you, are there any words that you would like to see in the treaty, I was just asking myself, would you like to see the words, United States, in there somewhere?

Mr. HANSELL. I am sorry to be a source of disappointment for the Panamanians, but obviously we are not entering into an agreement between the United States and Panama that would exempt U.S. citizens from U.S. tax. The purpose of this, of course, was to exempt them from Panamanian tax.

Senator STONE. How would you clarify that in words of writing?

Mr. HANSELL. I believe that is actually under way by the authorities in Panama. The Army, I think is preparing some information for the zone residents on all aspects of this, including the tax aspect.

Senator STONE. Wouldn't you think that we could put in the understanding that I suggested to you, the clarification of our interpretation which then, when ratified by the Congress, by the Senate, and deposited, would clarify that in a little more formal way than simple advices, since you don't want to put words back in the treaty through negotiation?

Mr. HANSELL. The one comment I would have with respect to that, and this relates to a couple of other points, is that we are dealing now with an internal U.S. matter, not a matter between the United States and Panama. That is, we don't agree with Panama how we are going to tax our citizens. That is obviously an internal matter. I would hope we could find ways of dealing with internal matters other than as understandings.

*Panama Canal Treaties: Hearings Before the Comm. on Foreign Relations,* 95th Cong., 1st Sess. 268 (1977).

The primary provisions of the Panama Canal Treaty returned control of the territory known as the Canal Zone to the Republic of Panama and retained a United States agency, the Panama Canal Commission, to operate the canal. In negotiating such a treaty it would be of great concern to the United States how Panama would treat that agency and its employees and one area of concern would naturally be the imposition by Panama of any taxes on the agency or its employees, and it therefore follows that a provision in the Treaty would cover that issue. On the other hand, as pointed out by Mr. Hansell, the imposition of taxes by either sovereign on its own citizens would be of no concern to the negotiators and accordingly would not be mentioned in the Treaty. This is the logical viewpoint since the United States would have no interest in bargaining with the Republic of Panama over whether it can tax its own citizens.

That this was in fact the case is clearly shown by the deliberations of the Senate on ratification of the Treaty. In February, 1978, after extensive hearings, the Committee on Foreign Relations issued a report on the Panama Canal Treaties which was over 300 pages in length. Contained in the report were section-by-section analyses of the Treaties and the implementing agreements. The analyses were provided by the Department of State to the Committee in December, 1977. Douglas J. Bennet, Jr., Assistant Secretary for Congressional Relations, wrote a transmittal letter to Senator Sparkman which accompanied the analyses. The letter states in part:

These analyses were prepared by members of the treaty negotiating team and have been approved by the offices of the State and Defense Departments directly involved in the negotiations, including the Panama Canal Company. Accordingly, these comments may be considered as an authoritative source of information with

respect to the negotiating background and interpretation of the Treaties.

S.Rep. No. 12, 95th Cong. 2nd Sess. 127 (1978).

The analysis of paragraph 2 of Article XV of the Agreement in Implementation of Article III reads as follows:

Paragraph 2 exempts United States citizen employees and dependents from the imposition by Panama of taxes on income received as a result of their work with the Commission and on the income derived from sources outside Panama. Such persons are subject, however, to Panamanian taxation of any income derived from sources outside [sic] [1] Panama, other than their employment with the United States Government.

*Report* at 155.

■ In construing a treaty, courts should give great weight to the meaning ascribed by the government departments charged with negotiation and enforcement of the treaty. *Kolovrat v. Oregan,* 366 U.S. 187, 194, 81 S.Ct. 922, 926, 6 L.Ed.2d 218 (1961); *State of Minnesota v. Block,* 660 F.2d 1240, 1258, n. 43 (8th Cir.1981). Surely there is no more authoritative source of the United States' position regarding paragraph 2 of Article XV than the above analysis.

Plaintiffs argue that the treaty must be interpreted consistent with the intent of both signing parties, *citing Maximov, supra,* and that the analysis provided by the State Department is not relevant to the Panamanian position regarding paragraph 2 of Article XV. Nothing has been offered or brought into question, however, which even intimates that the understanding of the Panamanians is contrary to that of the analysis provided in part by the United States negotiating team.

■ The Court finds that no genuine issue of material fact exists in this case because, as a matter of law, paragraph 2 of Article XV of the Agreement in Implemen-

tation of the Panama Canal Treaty does not exempt plaintiffs from paying federal income taxes on income derived from work on the Panama Canal Commission and that the summary judgment heretofore granted defendant is proper.

This opinion is hereby substituted for the Court's memorandum opinion dated March 14, 1983.

---

1. Obviously the proper word should be "inside." The first and second sentence otherwise contradict each other. Also, the analysis of Paragraph 3 provides in part that "property

used by a dependent in the conduct of private business activities in Panama is subject to taxation." *Report* at 155.