**Richard SWEARINGEN, and Bette Swearingen, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. 82–M–980.

United States District Court, D. Colorado.

June 29, 1983.

Dennis W. King, Joseph H. Thibodeau, P.C., Denver, Colo., Elisabeth A. Walker,

Darrell F. Brown & Associates, P.C., Little Rock, Ark., for plaintiffs.

Susan Souder, Tax Div., Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

MATSCH, District Judge.

This is an action under 28 U.S.C., seeking recovery of taxes illegally or erroneously assessed by the United States. Richard and Bette F. Swearingen ("the plaintiffs") moved for summary judgment. The United States ("the government") filed a cross motion for summary judgment. Both parties have submitted extensive briefs, and a hearing on the cross motions has been held.

The plaintiffs are married citizens of the United States and residents of Fort Collins, Colorado. During tax year 1979, they resided in that part of the Republic of Panama which was the Canal Zone. They received income as a result of their employment with the Panama Canal Commission, an agency of the United States government.

The plaintiffs jointly filed Form 1040 for tax year 1979, paying tax in the amount of $11,729.00. In 1980, the plaintiffs filed a refund claim for $4,982.00, an amount equal to the taxes assessed on their wages earned between October 1 and December 31, 1979, from the Panama Canal Commission. Their claim for a refund was disallowed by the Internal Revenue Service, and they then commenced this suit.

The plaintiffs claim that a plain reading of two provisions, paragraph 9 of article III of the Panama Canal Treaty and paragraph 2 of article XV of the Agreement in Implementation of Article III of the Treaty, exempts from U.S. taxation their income from the Panama Canal Commission. Paragraph 9 of article III of the Treaty provides:

9. The use of the areas, waters and installations with respect to which the United States of America is granted rights pursuant to this Article, and the rights and legal status of the United States Government agencies and employees operating in the Republic of Panama pursuant to this Article, shall be governed by the Agreement in Implementation of this Article, signed this date. The Agreement, in turn, contains article XV, which provides:

### TAXATION

1. By virtue of this Agreement, the Commission, its contractors and subcontractors, are exempt from payment in the Republic of Panama of all taxes, fees or other charges on their activities or property.

2. United States citizen employees and dependents shall be exempt from any taxes, fees, or other charges on income received as a result of their work for the Commission. Similarly, they shall be exempt from payment of taxes, fees or other charges on income derived from sources outside the Republic of Panama.

3. United States citizen employees and dependents shall be exempt from taxes, fees or other charges on gifts or inheritance or on personal property, the presence of which within the territory of the Republic of Panama is due solely to the stay therein of such persons on account of their or their sponsor's work with the Commission.

4. The Coordinating Committee may establish such regulations as may be appropriate for the implementation of this Article.

Paragraph 2 is not vague or ambiguous on its face. It clearly purports to exempt American employees working in Panama from *all* taxes on their income from the Commission. The wording of the other paragraphs in article XV lends support to this conclusion. It is clear that the exemption set out in Paragraph 1 relates only to *Panamanian* taxes on activities and property. Similarly, the reference in paragraph 3 to the Republic of Panama limits the application of the exemption described there to *Panamanian* gift, inheritance, and personal property taxes. In contrast, paragraph 2 contains no language to suggest that the income tax exemption described there applies only to Panamanian taxes.

■ Principles of statutory and contractual interpretation generally require courts to ignore legislative and negotiating history when called upon to interpret a clear and unambiguous provision. It is uncertain whether this principle of construction applies to the interpretation of international executive agreements, such as the one here in question. The rule apparently does not apply to the interpretation of treaties. In the recent opinion deciding *Sumitomo Shoji America, Inc. v. Avagliano,* 457 U.S. 176, 179, 102 S.Ct. 2374, 2377, 72 L.Ed.2d 765, 770 (1982), the Supreme Court implied that when a question is raised as to a treaty's meaning, courts should look beyond the written words to the legislative history, negotiating history and other information, even when the language used makes the meaning and effect of the document appear perfectly clear. The Supreme Court held:

> "The clear import of treaty language controls *UNLESS* 'application of the words of the treaty according to their obvious meaning effects a result inconsistent with the intent or expectations of its signatories.' *Maximov v. U.S.,* 373 U.S. 49, 54 [83 S.Ct. 1054, 1057, 10 L.Ed.2d 184] (1963)." 457 U.S. at 180, 102 S.Ct. at 2377, 72 L.Ed.2d at 770. [emphasis supplied].

Before deciding whether the *Sumitomo* rule of construction applies to executive agreements implementing treaty provisions, and before proceeding with protracted and costly discovery relating to the history of these compacts, consideration should be given to the constitutional implications of amending internal revenue laws by arrangements with foreign governments. Assuming that the purpose and effect of paragraph 2 is to create the claimed tax exemption, there is an obvious and direct conflict between this result and § 61(a) of the Internal Revenue Code, which taxes "all income from whatever source derived." 26 U.S.C. § 61(a).

■ Treaty provisions are the "supreme Law of the Land," U.S. Const. Art. VI, cl. 2, and, depending on the subject matter, may supersede prior inconsistent acts of Congress. *Edwards v. Carter,* 580 F.2d 1055, 1058 (D.C.Cir.), *cert. denied* 436 U.S. 907, 98 S.Ct. 2240, 56 L.Ed.2d 406 (1978); *see Whitney v. Robertson,* 124 U.S. 190, 8 S.Ct. 456, 31 L.Ed. 386 (1888). The same cannot be said of executive agreements, *see United States v. Guy W. Capps, Inc.,* 204 F.2d 655 (4th Cir.1953) which, unlike treaties, require no Senate ratification and are not directly authorized by or described in the Constitution.

■ Is it appropriate to consider paragraph 2 of the Agreement as a part of the Panama Canal Treaty? The plaintiffs argue that because this particular Agreement was referred to in the body of the Treaty, it was effectively incorporated into the Treaty by reference, and that some provisions of the Treaty lack precise meaning unless the Agreement is read as a material part of the Treaty.

While the Agreement includes matters of importance to the two governments, it is clear that the Agreement was not intended to be part of the Treaty itself. The two documents were negotiated and executed at approximately the same time, and the President could have included the taxation provisions in the Treaty before submitting it for Senate ratification. The President did not follow this course, and it is not this court's role nor is it within its authority to now substitute its judgment for that of the President and the Senate and confer treaty status upon the provisions of an executive agreement.

As noted above, executive agreements do not supersede prior inconsistent acts of Congress because, unlike treaties, they are not the "supreme Law of the Land." *See United States v. Guy W. Capps, Inc., id.;* Rest. of the Law, 2d, Foreign Relations Law of the United States, § 144(1) (1965); Nowak, Rotunda, and Young, *Constitutional Law* at p. 189–90 (West 1978). Thus, while paragraph 2 of the Agreement may appear to create an income tax exemption for the Commission employees, that provision is void because it conflicts with § 61(a) of the Internal Revenue Code. Accordingly, the

plaintiffs' claim for a refund must be denied.

Assuming the foregoing analysis to be incorrect, a treaty which created an exemption from the taxation of income of United States citizens, contrary to the provisions of the Internal Revenue Code, would be in contravention of the exclusive constitutional authority of the House of Representatives to originate all bills for raising revenues. *See* U.S. Const. Art. I, § 7, cl. 1; *Edwards v. Carter, id.* at 1058. The House has no role in the treaty making power provided for in Article II, section 2, clause 2 of the Constitution, which reads:

> He [the President] shall have Power, by and with the Advice and Consent of the Senate, to make Treaties, provided two thirds of the Senators present concur;
>
> . . .

This court is well aware of the caution that constitutional questions should be considered only when absolutely necessary in the determination of the dispute presented by the parties. It may well be that the government's contention that the negotiating history concerning the purpose of these paragraphs of the Treaty and the Agreement would compel the conclusion that the words were intended to say something other than their plain meaning. However, that determination cannot be made in ruling on a motion for summary judgment. The plaintiffs would have a right to compel discovery which would involve officials at very high levels of government and which would necessarily generate difficult questions of executive and congressional privilege. Accordingly, judicial economy dictates the need for this inversion of issues.

Upon the foregoing, it is

ORDERED, that the plaintiffs' motion for summary judgment is denied, the defendant's motion for summary judgment is granted and the Clerk shall enter a judgment dismissing this action and awarding the defendant its costs.