GEORGE E. SMITH AND THEODORA SMITH, PETITIONERS *V.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 23371–82.     Filed November 23, 1984.

*Andrew C. Barnard*, for the petitioners.
*Donald Rightnour*, for the respondent.

OPINION

SCOTT, *Judge*: Respondent determined a deficiency in petitioners' income tax for the calendar year 1979 in the amount of $5,969. The issues for decision are (1) whether petitioners are exempt from Federal taxation of wages earned from the Panama Canal Commission during the period October 1, 1979, through December 31, 1979, under the Panama Canal Treaty; (2) whether tropical differential payments received by petition-

ers from the Panama Canal Commission and the Panama Canal Co. during calendar year 1979 are excludable from gross income pursuant to section 912(1)(C) or 912(2);[1] (3) whether petitioners were engaged in a trade or business of boat charter and, if so, whether expenses claimed to be deductible with respect to that activity were ordinary and necessary business expenses; (4) whether petitioners are entitled to deduct as ordinary and necessary business expenses in a rental business any amounts in excess of the amounts conceded by respondent to be deductible; and (5) whether petitioners are entitled to deduct telephone expenses as an employee business expense when they have claimed the zero bracket amount on their tax return.

All of the facts were submitted by written or oral stipulations and documentary evidence and are found accordingly.

Petitioners, husband and wife, filed a joint Federal income tax return for calendar year 1979 reporting income received by George E. Smith (petitioner) from the Panama Canal Co. for the period January 1, 1979, through September 30, 1979, and from the Panama Canal Commission for the period October 1, 1979, through December 31, 1979. During the year 1979, petitioner in his employment by the Panama Canal Co. from January 1 through September 30 received $46,770.33 in wages, including a tropical differential in the amount of $5,655.64. The United States exercised territorial sovereignty over the Panama Canal Zone from January 1, 1979, through September 30, 1979, pursuant to a 1903 treaty between the United States and the Republic of Panama. In that treaty, Panama granted to the United States "all the rights, power and authority within the [canal] zone * * * which the United States would possess and exercise if it were the sovereign."[2] The Panama Canal Co. was the agency responsible for the operation and control of the Panama Canal during that time.[3]

The Panama Canal Co. became the Panama Canal Commission on October 1, 1979, the effective date of the Panama Canal Treaty, T.I.A.S. 10030. The Panama Canal Commission, like its

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954 as amended and in effect during the year here in issue.

[2] Isthmian Canal Convention, art. III, 33 Stat. 2234; T.S. 431 (signed Nov. 18, 1903; entered into force Feb. 26, 1904).

[3] C.Z. Code tit. 2, sec. 61(a)(1962).

predecessor, is responsible for the maintenance and operation of the Panama Canal. 22 U.S.C. secs. 3611 and 3651(1)(A)(1982).

Petitioner was employed from October 1, 1979, through December 31, 1979, by the Panama Canal Commission and received $14,284.21 in wages, including a tropical differential in the amount of $1,885.21. On their 1979 return, petitioners reported as income the total of the $61,055 of wages received by petitioner from the Panama Canal Co. and the Panama Canal Commission. On March 12, 1980, petitioners filed a claim for refund of income taxes in the amount of $6,599 based on a claimed exclusion from gross income of salaries and wages in the amount of $14,284.21 on the ground that the wages received by petitioner from the Panama Canal Commission from October 1, 1979, through December 31, 1979, were not subject to Federal income tax.

Attached to petitioners' 1979 return was a Schedule C reporting a net loss of $4,754 from operating a charter boat business located in Cape Rosier, Brooksville, ME. On this Schedule C, income of $780 was reported and the following deductions claimed:

| | |
|---|---:|
| Advertising | $25 |
| Depreciation[1] | 3,011 |
| Insurance | 350 |
| Postage/safe box | 16 |
| Taxes | 80 |
| Winter storage fees | 586 |
| Labor and materials—repair | 551 |
| Gas and oil | 32 |
| Purchasing trip | [2]883 |

September trip—5 weeks

| | |
|---|---:|
| Air fare | $1,022 |
| Food and meals | 540 |
| Auto mileage | 175 |
| Telephone calls | 30 |
| | 1,767 |

| | |
|---|---:|
| Total deductions | 5,534 |
| Net loss (total deductions minus gross receipts or sales of $780) | (4,754) |

[1]The depreciation was claimed on a 34-foot new Duffy boat with a $21,080 cost basis. Depreciation was computed on the straight-line method over a 7-year useful life.

[2]Petitioners took a 5-week trip in September 1979 from the Panama Canal Zone to Maine for the claimed purpose of purchasing the Falmouth property and the charter boat. The total cost of the trip was $1,767. The amount deducted on Schedule C was $883 for purchase of the charter boat, leaving $884 as a deduction for purchase of the Falmouth property.

On Schedule E of their 1979 Federal income tax return, petitioners reported rental income of $1,225 with respect to property purchased in 1964 in Brooksville, ME, consisting of land and a house with three bedrooms and two and one-half baths, and deducted $883 for depreciation which was computed on the straight-line method over a 15-year useful life on a $12,500 cost basis ($14,000 cost minus $1,500 for the land equals $12,500). Petitioners deducted the following expenses with respect to the property:

| | |
|---|---:|
| Taxes | $776 |
| Repairs—labor | 767 |
| Repairs—materials | 570 |
| April repairs—labor and materials | 731 |
| Insurance | 249 |
| Varnish porch | 20 |
| Utilities | 175 |
| Total expenses | 3,288 |

On Schedule E of their 1979 Federal income tax return, petitioners reported no rental income with respect to land and a three-bedroom ranch home purchased on December 3, 1979, in Falmouth, ME, and deducted $311 for depreciation which was computed for 1 month on the straight-line method over a 15-year useful life on a $56,000 cost basis ($62,000 cost minus $6,000 land equals $56,000). Petitioners deducted the following expenses with respect to the property:

| | |
|---|---:|
| Advertising | $30 |
| Utilities | 30 |
| Fire insurance | 182 |
| Locks | 15 |
| Interest | 449 |
| Purchasing trip | [1]884 |
| Total expenses | 1,590 |

[1]Petitioners took a 5-week trip in September 1979 from the Panama Canal Zone to Maine for the claimed purpose of purchasing the Falmouth property and the charter boat. The total cost of the trip, as previously indicated with respect to the charter boat deduction, was $1,767. The amount deducted on Schedule C was $883 for purchase of the charter boat, leaving $884 as a deduction for purchase of the Falmouth property.

On Form 2106, which was attached to their 1979 Federal income tax return, petitioners claimed an employee business expense in the amount of $108 for a "Standby/Callback" telephone expense.

Respondent in his notice of deficiency to petitioners disallowed petitioners' claim for refund with the explanation that wages earned by petitioner from the Panama Canal Commission are not exempt from U.S. Federal income tax pursuant to the Panama Canal Treaty. In the notice of deficiency, respondent disallowed petitioners' claimed loss from a charter boat operation with the explanation that petitioners had not established that the amounts were proper business expenses or that "a bona fide business exists."[4] Also in the notice, respondent disallowed the claimed $6,022 of expenses in connection with the Brooksville and Falmouth, ME, properties, explaining that petitioners had not established that they paid or incurred qualifying rental expenses.[5] Respondent disallowed the claimed $108 employee business expense with the statement that the amount would be allowable only as an itemized deduction, and since petitioners claimed the zero bracket amount, they were precluded from claiming itemized deductions.

In their petition, petitioners claimed that they erroneously failed to exclude from income the tropical differential paid to petitioner for the period January 1, 1979, through September 30, 1979, and in the alternative claimed this exclusion for the period October 1, 1979, through December 31, 1979.

### 1. Petitioner's Claimed Exemption of Wages From U.S. Income Tax Under the Panama Canal Treaty

Petitioner takes the position that his wages earned as an employee of the Panama Canal Commission during the period from October 1, 1979, through December 31, 1979, are exempt from U.S. income tax pursuant to the terms of article XV of the Agreement in Implementation of Article III of the Panama Canal Treaty of 1977, T.I.A.S. 10031.

Pursuant to article I of the Panama Canal Treaty, territorial sovereignty over the Canal Zone was restored to the Republic of Panama, thereby terminating the territorial jurisdiction exercised by the United States since 1903. However, the

---

[4]The notice of deficiency states that the Schedule C loss in the amount of $5,534 is not allowed but the parties agreed that petitioners are entitled to deduct expenses to the extent of the $780 reported income so that the amount disallowed should have been $4,754.

[5]Respondent has conceded that the amounts of $1,604 and $603 are properly deductible as business expenses with respect to the Brooksville and Falmouth properties, respectively.

operation of the canal was to be continued by the United States for a stated period. On October 1, 1979, the Panama Canal Commission became the U.S. agency charged with the responsibility of operating and managing the Panama Canal pursuant to article III, paragraph 3, of the Panama Canal Treaty.[6]

The rights and legal status of the Panama Canal Commission and its employees are governed by the September 7, 1977, Agreement in Implementation of Article III of the Panama Canal Treaty, T.I.A.S. 10031 (the agreement). Article XV of the agreement, which deals with taxation of the Panama Canal Commission, its contractors and subcontractors, and the U.S. citizen employees of the Commission and their dependents provides:

### ARTICLE XV

#### TAXATION

1. By virtue of this Agreement, the Commission, its contractors and subcontractors, are exempt from payment in the Republic of Panama of all taxes, fees or other charges on their activities or property.

2. *United States citizen employees and dependents shall be exempt from any taxes, fees, or other charges on income received as a result of their work for the Commission.* Similarly, they shall be exempt from payment of taxes, fees or other charges on income derived from sources outside the Republic of Panama.

3. United States citizen employees and dependents shall be exempt from taxes, fees or other charges on gifts or inheritance or on personal property, the presence of which within the territory of the Republic of Panama is due solely to the stay therein of such persons on account of their or their sponsor's work with the Commission.

4. The Coordinating Committee may establish such regulations as may be appropriate for the implementation of this Article.

[Emphasis added.]

Petitioner takes the position that the broad "any taxes" language of paragraph 2 of article XV exempts him from U.S. income tax on the income he received from the Panama Canal Commission from October 1, 1979, through December 31, 1979.

---

[6] Art. 1, par. 1, of the Agreement in Implementation of Article III of the Panama Canal Treaty of 1977, T.I.A.S. 10031, provides:

" 'Panama Canal Commission' (hereinafter referred to as 'the Commission') means the agency or agencies of the Government of the United States responsible for carrying out the responsibilities and rights of the United States under the Panama Canal Treaty with respect to the management, operation, and maintenance of the Panama Canal."

We had this precise issue before us in *McCain v. Commissioner*, 81 T.C. 918 (1983). In that case, we held that the Canal Treaty and the agreement exempted a U.S. citizen employee of the Panama Canal Commission from Panamanian income tax on wages received for work for that Commission, but not from U.S. income tax on such wages. We follow our decision in that case for the reasons stated therein.[7]

In *McCain v. Commissioner, supra* at 926, we stated the following:

Taken on its face, the "any taxes" language may be read literally to grant the broad tax exemption urged by petitioner. When paragraph 2 is read in context with paragraphs 1 and 3 of article XV, however, we find that the language of paragraph 2 does not clearly grant this exemption.

In *McCain v. Commissioner, supra* at 928, we quoted the testimony of the legal adviser to the Department of State at the Senate hearing on the treaty in which he advised the Senate with reference to paragraph 2 of article XV that—

I am sorry to be a source of disappointment for the Panamanians, but obviously we are not entering into an agreement between the United States and Panama that would exempt U.S. citizens from U.S. tax. The purpose of this, of course, was to exempt them from Panamanian tax. [Hearings on Panama Canal Treaties Before the Comm. on Foreign Relations, 95th Cong., 1st Sess. 268 (1977).]

In addition in *McCain*, we cited the report of the Senate Committee on Foreign Relations on the Panama Canal Treaties, Exec. Rept. 95–12 (1978), which contains a section-by-

---

[7]At the time of our decision in *McCain v. Commissioner*, 81 T.C. 918 (1983), no court had held wages paid to a U.S citizen by a Panama Canal Commission to be exempt from U.S. income tax and a number of cases had held no such exemption to exist. However, since the promulgation of our opinion in the *McCain* case, two courts have held that wages received by a U.S. citizen from the Panama Canal Commission are exempt from U.S. income tax. These cases are *Harris v. United States*, 585 F. Supp. 862 (S.D. Ga. 1984), on appeal (11th Cir., June 8, 1984), and *Coplin v. United States*, 1 Cl. Ct. 144 (1984), on appeal (Fed. Cir., Sept. 28, 1984). The U.S. Claims Court held in the *Coplin* case that the implementation agreement was a "treaty" and that under sec. 894(a), if income was excluded by this agreement from U.S. tax, such exclusion took precedence over other provisions of the Revenue Code. The Claims Court then concluded that the language in art. XV, par. 2, of the implementation agreement should be strictly construed. The Claims Court concluded that par. 2 of art. XV of the implementation agreement clearly states that income earned by U.S. citizens from the Panama Canal Commission is exempt from Panamanian and U.S. taxation, relying on *Harris v. United States, supra*. The Claims Court supported its conclusion by comparing par. 1 with pars. 2 and 3 in art. XV of the implementation agreement, noting that the language of par. 2 stands in sharp contrast with that of par. 1 of the same article which provides that the Commission itself shall be "exempt from payment in the *Republic of Panama* of all taxes." (Emphasis added.)

section analysis of the Canal and Neutrality Treaties and the implementing agreements. The analyses were prepared by members of the treaty negotiating team and were approved by the Offices of the Departments of State and Defense directly involved in negotiations. The following was provided with respect to article XV, paragraph 2, of the agreement (Exec. Rept. 95–12, at 155):

> Paragraph 2 exempts United States citizen employees and dependents from the imposition *by Panama* of taxes on income received as a result of their work with the Commission and on the income derived from sources outside Panama. Such persons are subject, however, to Panamanian taxation of any income derived from sources outside [sic] Panama, other than their employment with the United States Government. [Emphasis added.]

After affording "great weight to the meaning ascribed by the Government departments charged with negotiation and enforcement of the treaty" (*Kolovrat v. Oregon*, 366 U.S. 187, 194 (1961); *State of Minnesota v. Block*, 660 F.2d 1240, 1258 (8th Cir. 1981)), we concluded in *McCain* that article XV, paragraph 2, of the agreement was intended to exempt U.S. citizen employees of the Panama Canal Commission from Panamanian income tax, but not to exempt U.S. citizens working for the Commission from U.S. income tax. *McCain v. Commissioner, supra* at 929. This conclusion is consistent with that reached by other courts[8] in *Corliss v. United States*, 567 F. Supp. 162 (W.D. Ark. 1983); *Highley v. United States*, 574 F. Supp. 715 (M.D. Tenn. 1983); *Hollowell v. United States*, an unreported case (M.D. Fla. 1983, 53 AFTR 2d 699, 84–1 USTC par. 9142); *Pierpoint v. United States*, an unreported case (D. S.C. 1983, 52 AFTR 2d 6198, 83–2 USTC par. 9647); *Snider v. United States*, an unreported case (W.D. Wash. 1983, 53 AFTR 2d 349, 84–1 USTC par. 9140); *Stabler v. United States*, an unreported case (N.D. Tex. 1983, 53 AFTR 2d 1156, 84–1 USTC par. 9153). See also *Swearingen v. United States*,[9] 565 F. Supp. 1019 (D. Col.

---

[8]See also *Collins v. Commissioner*, T.C. Memo. 1983–762.

[9]In *Swearingen v. United States*, 565 F. Supp. 1019 (D. Col. 1983), the District Court reached the same result we rendered in *McCain v. Commissioner*, 81 T.C. 918 (1983), but based its holding on a different analysis. The court held that par. 2 purports to exempt U.S. employees working in Panama from all taxes on their income from the Panama Canal Commission and is therefore void because it conflicts with sec. 61(a) which taxes "all income from whatever source derived." 565 F. Supp. at 1021.

1983); *Stokes v. Commissioner*, an unreported case (W.D. Wash. 1983, 52 AFTR 2d 6137, 83–2 USTC par. 9644).

We sustain respondent in his conclusion that petitioners are not exempt from U.S. income tax on petitioner's wages received from the Panama Canal Commission.[10]

## 2. *Exclusion From Income of Tropical Differentials*

It is well settled that the income received by a U.S. citizen outside the United States is subject to U.S. income tax unless specifically exempt by some provision of law. Petitioners recognize this settled rule of law but contend that the tropical differential received by the petitioner is exempt under section 912. Section 912(1)(C) and (2) provides that:

The following items shall not be included in gross income, and shall be exempt from taxation under this subtitle:

(1) FOREIGN AREAS ALLOWANCES.—In the case of civilian officers and employees of the Government of the United States, amounts received as allowances or otherwise (but not amounts received as post differentials) under—

\* \* \* \* \* \* \*

(C) title II of the Overseas Differentials and Allowances Act, \* \* \*

\* \* \* \* \* \* \*

(2) COST-OF-LIVING ALLOWANCES.—In the case of civilian officers or employees of the Government of the United States stationed outside the continental United States (other than Alaska), amounts (other than amounts received under title II of the Overseas Differentials and Allowances Act) received as cost-of-living allowances in accordance with regulations approved by the President.

Title II of the Overseas Differentials and Allowances Act (ODA Act), Pub. L. 86–707, 74 Stat. 792–802, 5 U.S.C. secs. 5921–5926 (1982), provides the means for compensating Gov-

---

[10]We have not overlooked petitioners' argument that the negotiators of the implementation agreement for the Republic of Panama did not take the same view of the meaning of par. 2 of art. XV as that expressed in the analysis by the members of the U.S. negotiating team. In view of our conclusion that par. 2 of art. XV of the implementation agreement is ambiguous, much of petitioners' argument in this respect is irrelevant since it is based on a conclusion that the provision is clear. However, since petitioners produced no evidence to support their position as to the views of the Panamanian negotiators, we have not considered the conclusions they draw from this argument. Petitioners' argument is based on an affidavit which they attached to their brief. This affidavit was offered in evidence by petitioners at the trial but was not received.

ernment employees for the extra costs and hardships incident to their overseas assignments. Title II of the ODA Act provides for three types of compensation to a civilian employee of the U.S. Government officially stationed in a foreign area in addition to the employee's basic pay. These types of additional compensations are: living quarters allowances, cost-of-living allowances, and post differentials. Tropical differentials are not mentioned in the ODA Act.

Respondent takes the position that the tropical differentials received by petitioner are includable in petitioner's gross income because the payments do not constitute a foreign area allowance excludable under section 912(1)(C) or a cost-of-living allowance excludable under section 912(2).

In respondent's view, the tropical differentials do not constitute a foreign area allowance excludable under section 912(1)(C) because title II of the ODA Act does not presently apply to civilian employees of the U.S. Government working in the Republic of Panama and, prior to October 1, 1979, did not apply to such employees working in the former Panama Canal Zone.

The ODA Act provides in pertinent part that "foreign area" means "any other area outside the United States, the Commonwealth of Puerto Rico, the Canal Zone, and territories and possessions of the United States." 5 U.S.C. sec. 5921(6)(B). In respondent's view, the definition of "foreign area" in the ODA Act does not include the Panama Canal Zone and, thus, the tropical differential paid by the Panama Canal Co. from January 1, 1979, through September 30, 1979, does not constitute a tax-exempt foreign area allowance under title II of the ODA Act.

Respondent cites 22 U.S.C. sec. 3657(d)(1979) of the Panama Canal Act to support his conclusion that the income exclusion in section 912(1)(C) does not apply to tropical differentials petitioner received from the Panama Canal Commission from October 1, 1979, to December 31, 1979. 22 U.S.C. section 3657(d) provides:

Subchapter III of chapter 59 of title 5, United States Code [5 U.S.C.S. secs. 5921 et seq.], relating to overseas differentials and allowances, shall not apply with respect to any employee whose permanent duty station is in the Republic of Panama and who is employed by an agency.

It is respondent's position that this provision expressly makes title II of the ODA Act inapplicable to civilian employees of the U.S. Government working in the Republic of Panama after October 1, 1979.

In the alternative, respondent takes the position that the tropical differentials in the instant case closely resemble taxable "post differentials" due to the similarities between tropical differentials and post differentials. Section 912(1) expressly proscribes post differentials from qualifying for the section 912 income exclusion. In respondent's view, tropical differentials and post differentials both provide a recruitment incentive to civilian employees of the U.S. Government stationed outside the continental United States.[11]

Respondent further states that the tropical differentials do not qualify as tax-exempt cost-of-living allowances because payment of the differentials was not based upon the cost of living in Panama compared to the cost of living in the District of Columbia but was a set amount designed as a recruitment incentive.[12] Respondent cites the Panama Canal Regulations, which provide in pertinent part that the tropical differential shall be "adjusted to the extent necessary to furnish a suitable incentive in recruitment of qualified personnel." 35 C.F.R. sec. 253.135(a)(1979).

Petitioner takes the position that the tropical differentials were essentially tax-exempt cost-of-living or housing allowances rather than post differentials. The purpose of the tropical differential was not only to act as a recruitment incentive but also "to provide pay benefits substantially equal to those accorded U.S. citizens employed by the Federal Government in comparable foreign areas." 35 C.F.R. sec. 253.135(a)(1979). According to petitioner, tropical differentials are therefore excludable either as foreign area allowances under section 912(1)(C) or, if not excludable under that section, as cost-of-living allowances under section 912(2).

---

[11]To support this view, respondent cites a Fifth Circuit non-tax case wherein the court compared the tropical differential to the post differential and noted that the tropical differential was designed as a monetary incentive to civilians employed outside the continental United States. *Leber v. Canal Zone Central Labor Union & Metal Trades Council*, 383 F.2d 110, 120 (5th Cir. 1967), cert. denied sub nom. *Bramlett v. Leber*, 389 U.S. 1046 (1968).

[12]Respondent cites the following revenue rulings to support this view: Rev. Rul. 59–407, 1959–2 C.B. 19; Rev. Rul. 84–19, 1984–6 I.R.B. 6.

In our view, the record shows that the tropical differentials received by petitioner in 1979 do not qualify as exempt foreign area allowances under section 912(1)(C). The Canal Zone is specifically excluded from the definition of "foreign area" under title II of the ODA Act. Since section 912(1)(C) excludes only "foreign area" allowances under title II of the ODA Act, the tropical differentials received by petitioner prior to October 1, 1979, are not excludable from his taxable income under section 912(1)(C). Further, the tropical differentials received from October 1, 1979, to December 31, 1979, likewise fail to qualify. The Panama Canal Act, as noted, provides that title II of the ODA Act shall not apply to any employee whose permanent duty station is in Panama and who is employed by a U.S. agency.

We also conclude that the tropical differentials paid to petitioner in 1979 are not cost-of-living allowances within the meaning of section 912(2).

The Canal Zone Code which governs payments made to petitioner for the period January 1, 1979, through September 30, 1979, provides in pertinent part:

### Additional allowance and differential

In addition to established basic compensation, there shall be paid to each employee who is a citizen of the United States such amounts as the head of the department concerned determines to be payable, as follows:

\* \* \* \* \* \* \*

(2) an overseas (tropical) differential not in excess of an amount equal to 25 percent of the aggregate amount of the rate of basic compensation so established \* \* \*
[C.Z. Code tit. 2, sec. 146, 76A Stat. 17 (1963).]

The Panama Canal Regulation, 35 C.F.R. sec. 253.135(a) (1979), referring to the tropical differential as an "incentive in recruitment" was promulgated under this section of the Canal Zone Code.

The Panama Canal Act provides with respect to the tropical differential paid by the Panama Canal Commission to petitioner from October 1, 1979, through December 30, 1979, in pertinent part as follows:

Recruitment and retention remuneration

(a) Determination by head of agency. In addition to basic pay, additional compensation may be paid, in such amounts as the head of the agency concerned determines, as an overseas recruitment or retention differential to any individual who—

(1) before October 1, 1979, was employed by the Panama Canal Company, by the Canal Zone Government, or by any other agency in the area then known as the Canal Zone;

(2) is an employee who was recruited on or after October 1, 1979, outside of the Republic of Panama for placement in the Republic of Panama; * * *

\*          \*          \*          \*          \*          \*          \*

(b) Restriction. Any employee described in more than one paragraph of subsection (a) of this section may qualify for a recruitment or retention differential under only one of those paragraphs.

(c) Limit on compensation. Additional compensation provided under this section may not exceed 25 percent of the rate of basic pay for the same or similar work performed in the United States by individuals employed by the Government of the United States.

[22 U.S.C. sec. 3657.]

It is clear from the above-quoted provisions that the tropical differentials received by petitioner are basically incentive pay rather than being related to any difference in cost-of-living in Panama and the District of Columbia. The exemption provided for by section 912(2) applies to cost-of-living allowances granted to offset the increased cost of living outside the continental United States. We considered the objectives of the section 912(2) cost-of-living allowance exclusion in *Sjoroos v. Commissioner*, 81 T.C. 971, 973–975 (1983). Therein we stated (pp. 973–974):

The section [912(2)] first came into law during World War II when rapidly increasing income tax rates and increased living costs were consuming large portions of the allowances provided for Federal civilian employees stationed outside the United States. Instead of increasing the allowances to offset increasing Federal taxes and rising living costs, Congress adopted the alternative of exempting the cost-of-living allowances from taxation. That provision has been carried forward as section 912(2) * * * [Fn. ref. omitted.]

The purpose of cost-of-living allowances is to compensate Government employees for additional costs, hardships, and inconveniences which are incident to their working assignments in overseas areas. H. Rept. 902, 86th Cong., 2d Sess. (1959), 1960–2 C.B. 760. The tropical differentials received by

petitioner,[13] on the other hand, were designed to provide a compensatory recruitment and retention incentive so that the Panama Canal Co. (Panama Canal Commission after October 1, 1979) would not have difficulty recruiting and retaining U.S. civilian employees with skills that are crucial to continue effective operation of the Panama Canal and essential support activities. H. Rept. 96–98 (Part I) at 54–55 (1979).

The Fifth Circuit has noted that the purpose of the tropical differential paid by the Panama Canal Co. was to provide an "inducement to get American citizens to work overseas in so-called hardship areas and to alleviate some of the financial burdens of taking such employment." *Leber v. Canal Zone Central Labor Union & Metal Trades Council*, 383 F.2d 110, 120 (5th Cir. 1967), cert. denied sub nom. *Bramlett v. Leber*, 389 U.S. 1046 (1968). Petitioners point to provisions in the regulations governing tropical differentials that limit the payment to only one spouse if both are employed in the Canal Zone as indicating that the differential is a cost-of-living allowance. In our view, this provision does not indicate that the payment is a cost-of-living allowance.

### 3. Deduction of Charter Boat Expenses

Section 183(b) limits deductions by an individual attributable to any activity not engaged in for profit as follows:

SEC. 183(b). DEDUCTIONS ALLOWABLE.—In the case of an activity not engaged in for profit to which subsection (a) applies, there shall be allowed—
    (1) the deductions which would be allowable under this chapter for the taxable year without regard to whether or not such activity is engaged in for profit, and
    (2) a deduction equal to the amount of the deductions which would be allowable under this chapter for the taxable year only if such activity were engaged in for profit, but only to the extent that the gross income derived from such activity for the taxable year exceeds the deductions allowable by reason of paragraph (1).

The burden is on petitioner to show error in respondent's determination that the charter boat activity was not engaged

---

[13]Note that the Panama Canal Act does provide that a cost-of-living allowance be paid each officer and employee of the Panama Canal Commission to offset any increased cost of living which may result from the termination of the eligibility of the officer or employee and his dependents to use military postal services, sales stores, and exchanges. The amount of the allowance may be determined by the Commission. 22 U.S.C. sec. 3646. ·

in for profit and also that he paid amounts which qualify as business expenses. *Boyer v. Commissioner*, 69 T.C. 521, 537 (1977); *Benz v. Commissioner*, 63 T.C. 375 (1974).

This record is devoid of evidence that petitioner ever engaged in the activity of chartering the boat with the predominant purpose and objective of making a profit. The only evidence presented by petitioner to substantiate the existence of a charter boat business is: (1) An advertisement appearing in a newspaper to rent a 35-foot fiberglass power-boat; and (2) copies of receipts for amounts incurred to repair, store, and paint a boat. Based on this scant evidence, we find that petitioner has failed to establish the existence of a profit motive in operating a charter boat service in 1979 or to substantiate most of the claimed deductions. Deductions in excess of the $780 reported gross receipts or sales from the operation of the charter boat service are therefore not allow-able. Ordinary and necessary business expenses and deprecia-tion attributable to an activity not engaged in for profit are deductible only to the extent of gross income derived from such activity, less the amount of deductions which are allow-able whether or not the activity is engaged in for profit. Sec. 183(b); sec. 1.183–1(b)(1), Income Tax Regs.

## 4. Deduction of Rental Property Expenses

Section 162(a) provides that "there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." Petitioner bears the burden of proving that he is entitled to each of the claimed deductions and is required to keep books or records to substantiate all claimed deductions. Sec. 6001; sec. 1.6001-1(a), Income Tax Regs. Generally, where a taxpayer does not produce any record to substantiate his deductions, disallowance of claimed deductions is proper. See *Roberts v. Commissioner*, 62 T.C. 834, 836 (1974).

In our view, petitioner has failed to prove that rental expenses in excess of $2,207[14] were incurred as ordinary and

---

[14]The parties have agreed to deductible expenses with respect to the Brooksville property in the following amounts:

Taxes ............................................. $741
Insurance ....................................... 249

necessary business expenses, and we sustain respondent's disallowance of any claimed deductions in excess of this amount.

## 5. Deduction of Telephone Expense

Respondent takes the position that petitioners are precluded from claiming the $108 telephone expense as an employee business expense because the deduction is incorrectly listed as an employee business expense on Form 2106 which was attached to petitioners' return and is allowable, if at all, only as an itemized deduction.

Petitioners have offered no evidence with respect to the claimed telephone expense. They have not substantiated their business use of the telephone or shown that in fact they maintained a telephone for any business purpose. We therefore sustain respondent's disallowance of this claimed deduction.

*Decision will be entered under Rule 155.*

| | |
|---|---|
| Utilities | $134 |
| Depreciation | 480 |

The parties have agreed to deductible expenses with respect to the Falmouth property in the following amounts:

| | |
|---|---|
| Utilities | $30 |
| Taxes | 129 |
| Locks | 15 |
| Insurance[1] | 249 |
| Depreciation | 180 |

[1] At trial, the parties stipulated that $249 would be deductible as insurance for the Falmouth property, yet petitioners' return reveals that only $182 was deducted for fire insurance on the Falmouth property.