MYRTLE E. RUST, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 16199–84.     Filed August 15, 1985.

*Andrew C. Barnard* and *George S. Barnard,* for the petitioner.

*John N. Strange,* for the respondent.

#### OPINION

FEATHERSTON, *Judge*: This case was assigned to Special Trial Judge Hu S. Vandervort pursuant to section 7456[1] and Rules 180 and 181. The Court agrees with and adopts his opinion which is set forth below.

#### OPINION OF THE SPECIAL TRIAL JUDGE

VANDERVORT, *Special Trial Judge*: This case is before the Court on respondent's motion for partial summary judgment, filed on May 7, 1985, pursuant to Rule 121.

In the notice of deficiency issued April 4, 1984, respondent determined a deficiency and an addition to tax for the taxable year 1980 as follows:

---

[1] All section references are to the Internal Revenue Code of 1954 as amended, unless otherwise noted. All Rule references are to the Tax Court Rules of Practice and Procedure unless otherwise noted.

|  | | Sec. 6653(a) |
| Year | Deficiency | addition to tax |
| 1980 | $7,610 | $381 |

Respondent's motion for partial summary judgment raises the issue of whether article XVI of the Agreement in Implementation of Article IV of the Panama Canal Treaty of 1977, T.I.A.S. Nos. 10030 and 10032, provides petitioner with an exemption from the payment of U.S. income taxes, on wages petitioner received from the U.S. Air Force while living in Panama.

Petitioner filed a timely Federal income tax return for the taxable year 1980, while residing in the Republic of Panama c/o PSC Box 856, APO, Miami. On her 1040 form, petitioner reported no income, claiming total exemption due to her membership as a minister of the Trinity Mission Church of California and the Canal Zone (Trinity Mission Church). Attached to the tax return was petitioner's Certificate of Sacredotal Authority, dated June 10, 1980 A.D., and her Form W-2 from the Department of the Air Force, indicating that she had earned income of $30,200.15 in 1980.

On April 4, 1984, respondent issued a notice of deficiency, in response to which petitioner filed the petition to begin this case. In that document, filed May 22, 1984, petitioner contested respondent's determination of a deficiency on the ground that as a member of a religious order, she was neither required to file a return, nor subject to Federal income taxation.

Subsequent to respondent's timely answer, petitioner filed a motion for leave to amend on January 8, 1985. The Court granted the motion. On February 13, 1985, an amended petition was filed. The amended petition reiterated petitioner's position that, as a member of a religious order, she was exempt from taxation. In addition, petitioner claimed that the notice of deficiency was based on the error that respondent overlooked article XVI of the Agreement in Implementation of Article IV of the Panama Canal Treaty of 1977, T.I.A.S. Nos. 10030 and 10032, which according to the petitioner, "provides for tax exemption of income for U.S. employees of the military stationed in the Republic of Panama."

Thereafter, on March 18, 1985, the parties filed a stipulation of settled issue in which petitioner conceded the issue of exemption from taxation by virtue of having taken a vow of

poverty or having had her wages assigned to the Trinity Mission Church.

On May 7, 1985, respondent filed the motion for partial summary judgment which is now before the Court for consideration.[2]

Rule 121(b) states that a decision shall be rendered "if the pleadings, * * * and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." The party moving for summary judgment has the burden of demonstrating that no genuine issue as to any material fact exists. *Adickes v. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jacklin v. Commissioner,* 79 T.C. 340, 344 (1982).

Upon careful consideration of the record before us, we find that the facts of this case are not in dispute and that, as a matter of law, article XVI of the Agreement in Implementation of Article IV of the Panama Canal Treaty of 1977, T.I.A.S. Nos. 10030 and 10032, provides an exemption for employees of the U.S. Forces *only* from the payment of *Panamanian* income tax.

On September 7, 1977, the United States and the Republic of Panama signed the Panama Canal Treaty (the treaty), T.I.A.S. No. 10030,[3] and the treaty concerning the Permanent Neutrality and Operation of the Panama Canal, T.I.A.S. No. 10029. These treaties were signed in order to gradually restore to the Republic of Panama full sovereign control over the Panama Canal and the Canal Zone.

Article I of the treaty establishes the Republic of Panama as territorial sovereign of the Canal Zone, with rights to regulate "manage, operate, maintain, improve, protect and defend the Canal" reserved in favor of the United States.

Article III of the treaty vests Canal operation and management in the Panama Canal Commission, a U.S. agency.[4]

---

[2] One issue remains in this case. Respondent, in the notice of deficiency, asserted a sec. 6653(a) addition to tax for negligence, the resolution of which will not be determined by a grant or denial of the present motion.

[3] The effective date of the Panama Canal Treaty of 1977 and the accompanying agreements was Oct. 1, 1979, T.I.A.S. No. 10030; *Billman v. Commissioner,* 83 T.C. 534, 541 n. 6 (1984); *McCain v. Commissioner,* 81 T.C. 918, 920 (1983).

[4] Par. 9 of art. III provides that the "rights and legal status of United States Government agencies and employees operating in the Republic of Panama pursuant to this Article, shall be governed by the Agreement in Implementation of this Article." With regard to taxation, art. XV of the agreement in Implementation of Article III of the treaty states the following:

Article IV provides for the protection and defense of the Canal by the United States.[5] Article IV, paragraph 2 of the treaty provides:

2. For the duration of this Treaty, the United States of America shall have primary responsibility to protect and defend the Canal. The rights of the United States of America to station, train, and move military forces within the Republic of Panama are described in the *Agreement in Implementation of this Article,* signed this date. The use of areas and installations and *the legal status of the armed forces of the United States of America in the Republic of Panama shall be governed by the aforesaid Agreement.*

---

ARTICLE XV
*Taxation*

1. By virtue of this Agreement, the Commission, its contractors and subcontractors, are exempt from payment in the Republic of Panama of all taxes, fees or other charges on their activities or property.

2. *United States citizen employees and dependents shall be exempt from any taxes, fees, or other charges on income received as a result of their work for the Commission.* Similarly, they shall be exempt from payment of taxes, fees or other charges on income derived from sources outside the Republic of Panama.

3. United States citizen employees and dependents shall be exempt from taxes, fees or other charges on gifts or inheritance or on personal property, the presence of which within the territory of the Republic of Panama is due solely to the stay therein of such persons on account of their or their sponsor's work with the Commission.

4. The Coordinating Committee may establish such regulations as may be appropriate for the implementation of this Article.

[Emphasis added.]

This Court has interpreted this provision to provide that U.S. citizen employees of the Canal Commission shall be exempt from taxation *by Panama,* on income received as a result of employment with the Canal Commission. *Smith v. Commissioner,* 83 T.C. 702, 706–710 (1984); *McCain v. Commissioner,* 81 T.C. 918, 929 (1983). It does not exempt Canal Commission employees from the payment of U.S. income tax. *Smith v. Commissioner, supra; McCain v. Commissioner, supra.* The same conclusion has been reached by numerous other courts. *Coplin v. United States,* 761 F.2d 688 (Fed. Cir. 1985), revg. 6 Cl. Ct. 115 (1984); *Corliss v. United States,* 567 F. Supp. 162 (W.D. Ark. 1983); *Highley v. United States,* 574 F. Supp. 715 (M.D. Tenn. 1983); *Hollowell v. United States,* an unreported case (M.D. Fla. 1983, 53 AFTR 2d 84–698, 84–1 USTC par. 9142); *Pierpont v. United States,* an unreported case (D. S.C. 1983, 52 AFTR 2d 83–6198, 83–2 USTC par. 9647); *Snider v. United States,* an unreported case (W.D. Wash. 1983, 53 AFTR 2d 84–349, 84–1 USTC par. 9140); *Stabler v. United States,* an unreported case (N.D. Tex. 1983, 53 AFTR 2d 84–1156, 84–1 USTC par. 9153). But see *Harris v. United States,* 585 F. Supp. 862 (S.D. Ga. 1984).

However, the provision before the Court today is not art. III of the treaty, but art. IV.

[5]There are two executive agreements which serve to implement arts. III and IV of the Panama Canal Treaty. The Agreement in Implementation of art. III has been the focus of this Court's prior inquiries regarding the alleged tax-exempt status conferred on U.S. citizen employees of the Canal Commission residing in the Republic of Panama. See *Smith v. Commissioner,* 83 T.C. 702 (1984), and the cases cited within; see also note 4 *supra.*

Currently, however, our focus is on the Agreement in Implementation of Article IV of the treaty. We are unaware, through our own search and that of the parties involved, of any other court's having yet considered this agreement and its impact on the taxation of U.S. Forces personnel living in the Canal Zone. We do note, however, that the language pertaining to taxation in both agreements is similar, although not exact. See T.I.A.S. Nos. 10031 and 10032.

The Agreement in Implementation of Article IV of the treaty contains article XVI pertaining to taxation. Article XVI, in its entirety, is as follows:

### ARTICLE XVI

#### *Taxation*

(1) By virtue of this Agreement, the United States Forces are exempt from payment in the Republic of Panama of all taxes, fees or other charges on their activities or property, including those imposed through contractors or subcontractors.

(2) *Members of the Forces or the civilian component, and dependents, shall be exempt from any taxes, fees, or other charges on income received as a result of their work for the United States Forces or for any of the service facilities referred to in Articles XI or XVIII of this Agreement. Similarly, as is provided by Panamanian law, they shall be exempt from payment of taxes, fees or other charges on income derived from sources outside the Republic of Panama.*

(3) Members of the Forces or the civilian component, and dependents, shall be exempt from taxes, fees or other charges on gifts or inheritance or on personal property, the presence of which within the territory of the Republic of Panama is due solely to the stay therein of such persons on account of their or their sponsor's work with the United States Forces.

[Emphasis supplied.]

Petitioner takes the position that her wages, earned as an employee of the U.S. Air Force during the taxable year 1980, are exempt from U.S. income tax pursuant to the "shall be exempt from any taxes" language of article XVI, paragraph 2, of the Agreement in Implementation of Article IV of the treaty, T.I.A.S. No. 10032.

In construing a treaty, courts should give great weight to the meaning ascribed by the Government departments charged with negotiation and enforcement of the treaty. *Kolovrat v. Oregon,* 366 U.S. 187, 194 (1961); *Factor v. Laubenheimer,* 290 U.S. 276, 295 (1933); *State of Minnesota v. Block,* 660 F.2d 1240, 1258 (8th Cir. 1981). Any effort to ascertain the intent of the parties to any agreement must begin with the language in the agreement itself. The plain meaning of treaty language controls unless "application of the words of the treaty according to their obvious meaning effects a result inconsistent with the intent or expectations of its signatories." *Sumitomo Shoji America, Inc. v. Avagliano,* 457 U.S. 176, 180 (1982), quoting *Maximov v. United States,* 373 U.S. 49, 54 (1963).

We believe the following interpretation to be the plain meaning of article XVI. Paragraph 1 sets out the purpose of article XVI, to exempt U.S. Forces from the payment of Panamanian taxes, fees, or other charges on their activity or property. Paragraph 2 addresses the specific exemption from *income* taxation while paragraph 3 provides a specific exemption from *gift, inheritance,* and *personal property* taxation by the Republic of Panama.

The confusion surrounding the meaning of article XVI arises only when petitioner isolates the "any taxes" wording of paragraph 2 from the remaining language of article XVI. When article XVI is read, in its entirety, it is clear that the parties were referring only to the application of Panamanian taxes to U.S. Forces personnel. Although we think that this was the actual intent of the signatories to the treaty and accompanying agreements, we do recognize the potential ambiguity created by the use of the "any taxes" language in paragraph 2 of article XVI of the Agreement in Implementation of Article IV of the treaty.

When the language of the treaty is ambiguous or lends itself to more than one construction, the legislative history of the treaty and negotiations may be scrutinized to ascertain the intent of the parties. *Nielsen v. Johnson,* 279 U.S. 47, 52 (1929); *Hidalgo County Water Control & Imp. Dist. v. Hedrick,* 226 F.2d 1, 8 (5th Cir. 1955).

Such legislative history is found in the Committee on Foreign Relations Report on the Panama Canal Treaties, Exec. Rept. 95–12, 95th Cong., 1st Sess. (1978). The report contains a section-by-section analysis of the treaty and implementing agreements.[6] With respect to article XVI, paragraph 2 of the Agreement in Implementation of Article IV (Exec. Rept. 95–12, at 168), the report states:

---

[6]The introduction to the report states that:

"These analyses were prepared by members of the treaty negotiating team and have been approved by the offices of the State and Defense Departments directly involved in the negotiations, including the Panama Canal Company. Accordingly, these comments may be considered as an authoritative source of information with respect to the negotiating background and interpretation of the Treaties. [Exec. Rept. 95–12, at 127.]"

*Article XVI*

This Article exempts certain categories of property and activities from Panamanian taxation. Other property and activities not so specified will be subject to taxation in accordance with Panamanian law.

\*    \*    \*    \*    \*    \*    \*

Paragraph (2) exempts members of the Forces and the civilian component, and dependents from the imposition *by Panama* of taxes on income received as a result of their work with the United States Forces \* \* \* on income derived from sources outside Panama. Such persons are subject, however, to Panamanian taxation of any income derived from sources within Panama, other than their employment with the United States Government. [Emphasis supplied.]

From the foregoing it is clear that the United States intended to negotiate only over the imposition of Panamanian taxes on U.S. Forces personnel in the Canal Zone. A similar intention by the Republic of Panama is evidenced by a diplomatic note from the Panamanian Minister of Foreign Relations, Fernando Cardoze Fabrega.[7] See *Coplin v. United States,* 761 F.2d 688 (Fed. Cir. 1985), revg. 6 Cl. Ct. 115 (1984).

I have the honor to refer to Article 15(2) of the Agreement in Implementation of Article III and to Article 16(2) of the Agreement in Implementation of Article IV of the Panama Canal Treaty of 1977.

I have consulted with Drs. Romulo Escobar Bethancourt, Aristides Royo, Adolfo Ahumada, and Jaime Arias Calderon, Panamanian negotiators of those agreements, and they have confirmed to me that the provisions referred to above were discussed, negotiated, and *drafted exclusively with respect to the tax exemptions that the Republic of Panama would grant to United States-citizen employees of the Panama Canal Commission and their dependents and to members of the United States Armed Forces and the civilian component and their dependents.* The aforementioned provisions resulted from negotiations which did not deal with the United States authority to tax the individuals mentioned therein.

The foregoing expresses the scope of the aforementioned provisions and also represents the interpretation of this Ministry.

[Emphasis added.]

After examination of the treaty and the accompanying agreements, the legislative history, and diplomatic correspondence, we are convinced that the language ``exempt from any

---

[7]We have taken judicial notice of these documents. Fed. R. Evid. 201. Trials before this Court are conducted in accordance with the Fed. R. Evid., 28 U.S.C. app., the rules of evidence applicable in trials without jury in the U.S. District Court for the District of Columbia. Sec. 7453; Rule 143(a); Red. R. Evid. 101.

taxes," in paragraph 2 of article XVI, refers only to Panamanian taxes. The parties to the treaty, the United States and the Republic of Panama, are in agreement with this interpretation.

In view of the foregoing, we hold that the treaty and Agreement in Implementation of Article IV do not exempt petitioner's income from taxation by the United States. As a U.S. citizen, petitioner is taxable by the United States on her income from the U.S. Air Force for the year 1980.[8]

*An appropriate order will be issued.*

---

[8]It is a well-settled rule that U.S. citizens are subject to income taxation by the United States on their worldwide income. Sec. 1.1–1(b) Income Tax Regs.; *Cook v. Tait,* 265 U.S. 47 (1924); *Filler v. Commissioner,* 74 T.C. 406, 410 (1980). We need not discuss this rule in light of our finding that the Panama Canal Treaty does not purport to exempt U.S. citizens from the payment of income tax to the United States. But see *Swearingen v. United States,* 565 F. Supp. 1019, 1021 (D. Colo. 1983).